2000 ME 59

**STATE of Maine**

v.

**John HUETHER.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 25, 2000.
Decided April 7, 2000.

Anthony J. Sineni III, Portland, for defendant.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

WATHEN, C.J.

[¶ 1] John Huether appeals from a conviction entered in the Superior Court (Cumberland County, *Crowley, J.*) following his conditional guilty plea to one count of operating a motor vehicle after suspension. On appeal, Huether contends that the District Court [1] (Portland, *Sheldon, J.*) erred when it refused to suppress evidence, obtained during an investigatory stop, that Huether had been driving while his license was suspended. Huether contends the stop violated the fourth amendment's protection against unreasonable search and seizure because the investigating officer did not have a reasonable and articulable suspicion that would justify the stop. Finding no. error, we affirm the judgment.

[¶ 2] The relevant facts may be summarized as follows: On January 21, 1999, Detective Estabrook of the Cumberland County Sheriff's office was driving an unmarked car west on Route 302 in Windham when he took particular notice of a vehicle in front of him. From his vantage point, which was at a slight angle behind the car, Estabrook could see that the driver had dark black, bushy hair. Estabrook thought he recognized the driver as Gary Clark. Clark also had black curly hair, and Estabrook had had several contacts with him, though at least a year had passed since the last time they had met.

[¶ 3] Based upon this identification, Estabrook radioed for a registration check of the car and discovered that the car was registered to Clark and that Clark's license was suspended. The car was not

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty., Portland, for State.

1. Although the case was commenced in District Court, it was transferred to the Superior Court after the motion to suppress was denied.

being driven erratically, nor could Estabrook discern any criminal activity beyond the possibility that the driver was operating a vehicle while his license was under suspension. Because he was in an unmarked car, Estabrook asked the Windham police to send a marked car to perform a stop. Before the marked car arrived, however, the vehicle pulled into the parking lot of an auto body shop. Estabrook radioed Windham to redirect the patrol car and then followed the car into the lot, parking directly behind it so that it could not leave. Estabrook approached the driver and asked him for identification.

[¶ 4] The driver handed Estabrook a Maine State I.D., not a driver's license. At that point and for the first time, Estabrook realized that the driver was John Huether and not Gary Clark. Nonetheless, Estabrook checked Huether's identification by radio and discovered that Huether had five active suspensions. The check on Huether's identification was the detective's standard practice, done so that he could determine if the driver had any outstanding warrants.

[¶ 5] Huether was charged in the District Court with operating after suspension. Huether moved to suppress all evidence arising from Estabrook's stop. The court denied the motion after a hearing. Following transfer to the Superior Court, the State and Huether agreed that Huether would enter a conditional guilty plea to the charge and would receive a seven day sentence and a $1,000 fine. The Superior Court accepted the plea and entered judgment against Huether. Huether appeals from this judgment.

[¶ 6] On appeal, Huether argues that, at most, Estabrook had a mere "hunch" that Clark was driving the car and that, in the absence of other observable criminal activity, that "hunch" was not enough to give rise to a reasonable and articulable suspicion to justify the stop. We review the District Court's finding that the stop was justified for clear error. *See*

*State v. Brown,* 675 A.2d 504, 505 (Me. 1996). "The legitimacy of an investigatory search or seizure requires a two-step analysis." *State v. Storey,* 1998 ME 161, ¶ 12, 713 A.2d 331, 334. We first determine whether the initial stop was justified; if it was, then we look to what actions were taken during the stop to determine whether those actions were "reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Hill,* 606 A.2d 793, 795 (Me.1992).

[¶ 7] As the District Court noted, we have already analyzed the same facts presented by this case. In *State v. Hill,* 606 A.2d 793 (Me.1992), an officer stopped a truck in the belief that it was unregistered because there was no license plate on the rear of the vehicle. *See id.* at 794. Prior to reaching the cab of the vehicle but after he had stopped the vehicle, the officer realized that the license plate was located in the rear window of the cab. *See id.* at 794–95. Because the officer had made the stop before his suspicion had dissipated, the stop was permissible. *See id.* at 795. Likewise, when Estabrook stopped Huether, Estabrook was operating on more than just a hunch that the operator of the vehicle was Clark. Not only did the driver resemble Clark, but the car was registered to Clark, a fact which could only reinforce the reasonableness of Estabrook's belief that Clark was driving. Estabrook knew that Clark's license was suspended. The detective therefore had a reasonable and articulable suspicion that the car was being operated by a driver under suspension. As in *Hill,* this suspicion did not dissipate until after the stop: It was only when Estabrook looked at Huether's identification that the detective realized his mistake.

[¶ 8] In neither *Hill* nor the present case, however, did the investigating officer withdraw at the moment that the initial suspicion evaporated. In *Hill,* the officer proceeded to ask the driver of the truck for identification, and in the pro-

cess of obtaining the driver's identification discovered that the driver had been drinking. *See id.* Likewise, Estabrook took Huether's identification and performed a check for outstanding warrants. By the time he took this action, Estabrook's suspicion had evaporated. Estabrook knew that Clark had not operated the vehicle, and he did not yet know that Huether also had suspensions.[2] Having concluded that the initial stop was justified, we must turn to the determination of whether the search exceeded its permissible scope. *See id.* As we held in *Hill,* the identification request was reasonably related to the circumstances justifying the initial stop:

> [The] reasonableness determination involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. In this case, Hill was validly stopped for a suspected traffic violation. Officer Low then sought to ensure that Hill was neither unlicensed nor operating an unregistered vehicle. Balancing this significant State interest against the minimal further intrusion of asking Hill for the documents, we hold that Officer Low did not unreasonably intrude on Hill's fourth amendment rights.

*Id.* (internal citations and quotations omitted). This analysis applies equally to the present case.

The entry is:

Judgment affirmed.

---

**2.** The fact that Huether gave Estabrook an I.D. rather than a license does not necessarily lead to the conclusion that Estabrook had reasonable and articulable suspicion for the identification check. Although Estabrook was aware that state law requires that drivers must "have the license in immediate possession when operating a motor vehicle," 29–A M.R.S.A. § 1408 (1996). Estabrook indicated that the identification check was made as part of routine practice rather than from any suspicion arising from the presentation of an I.D. An officer must actually have a suspicion at the time of the search or seizure in order for that suspicion to support the officer's actions. *See State v. Chapman,* 495 A.2d 314, 317 (Me.1985).