2010 ME 43

**STATE of Maine**

v.

**Ernest J. DONATELLI.**

Supreme Judicial Court of Maine.

Argued: April 14, 2010.
Decided: May 25, 2010.

Leonard I. Sharon, Esq. (orally), Auburn, ME, for Ernest J. Donatelli.

Janet T. Mills, Atty. Gen., William R. Savage, Asst. Atty. Gen. (orally), David W. Fisher, Asst. Atty. Gen., Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1]   Ernest J. Donatelli appeals from a judgment of conviction of one count of unlawful trafficking in scheduled drugs (Class B), 17–A M.R.S. § 1103(1–A)(A) (2009), and one count of illegal importation of scheduled drugs (Class C), 17–A M.R.S. § 1118(1), (2)(A) (2009), entered in the Superior Court (Androscoggin County, *Marden, J.*) upon his conditional guilty plea. Donatelli contends that the court erred in denying his motion to suppress cocaine seized during a warrantless search of his vehicle.   He argues that this evidence should have been suppressed because it resulted from an illegal de facto arrest. We affirm the judgment.

## I.  BACKGROUND

[¶ 2]   The record reveals the following facts, which are not in dispute.   On September 29, 2008, at approximately 12:30 p.m., Maine Drug Enforcement Agent Terrence McCormick received a telephone call from a confidential informant claiming that Donatelli would be "returning from Massachusetts with a supply of cocaine."   The informant did not specify the precise time Donatelli would be returning to Maine, but told McCormick that Donatelli had left Massachusetts earlier that morning.   Although the informant provided no further

details, McCormick was familiar with Donatelli's vehicle based on a prior investigation and arrest, and knew that Donatelli was originally from Massachusetts. Additionally, approximately two years earlier, McCormick had been informed by two separate sources that Donatelli was a distributor of cocaine. McCormick was also generally aware that Massachusetts is a major point of distribution from which cocaine is transported to Maine.

[¶ 3] At the time of the Donatelli tip, McCormick had been working with the informant for approximately six months. During that time, the informant supplied information about four other individuals. That intelligence had led to two drug-related convictions; two other investigations were ongoing. According to McCormick, the informant was a former cooperating defendant who, in providing information about Donatelli, was "just continu[ing] to help."·

[¶ 4] Immediately following his conversation with the informant, McCormick formulated a plan to intercept Donatelli on the Maine Turnpike. Because Donatelli lived in Auburn, McCormick arranged for two officers from the Auburn Police Department to wait at the Auburn exit tollbooth, while Maine State Police Troopers patrolled the interstate. Together with Maine State Trooper Matthew Casavant and Casavant's police canine, McCormick drove in an unmarked van to the Gray exit to wait for Donatelli.

[¶ 5] At approximately 1:30 p.m., a state trooper spotted Donatelli's vehicle traveling northbound on Interstate 95 near Scarborough. Alerted to this information, McCormick and Casavant observed Donatelli's vehicle twenty minutes later, and contacted Maine State Trooper Fern Cloutier to assist them in making a traffic stop. As they followed Donatelli's vehicle, Casavant noticed that the sound of the vehicle's exhaust appeared to be in excess of ninety-five decibels and that the rear registration plate was partially obstructed, both of which are motor vehicle violations. *See* 29–A M.R.S. §§ 452, 1912 (2009).

[¶ 6] Cloutier stopped Donatelli's vehicle just north of the Auburn exit. The two Auburn officers, in separate vehicles, pulled in behind Cloutier's cruiser. Donatelli had a passenger with him, and both men were brought to the rear of Donatelli's vehicle, in front of Cloutier's cruiser.[1] Never losing sight of Donatelli's vehicle, McCormick and Casavant pulled their van in behind the Auburn officers. At this point, four police vehicles and five law enforcement officers were on the scene.

[¶ 7] After making sure that traffic was clear, McCormick walked over to Donatelli's vehicle, introduced himself, and asked Donatelli whether "there [were] any illegal drugs in his vehicle." Donatelli responded "no," and told McCormick that he could "go ahead and search" the vehicle. Donatelli was calm and cooperative and had not been formally arrested or placed in handcuffs. Although McCormick would not have allowed Donatelli to leave, he never communicated this intent to Donatelli. Within minutes of arriving on the scene, Casavant's police canine conducted an exterior "sniff test" of Donatelli's vehicle and detected the presence of narcotics. A subsequent search of the vehicle yielded evidence of cocaine.

[¶ 8] Donatelli was indicted on one count of unlawful trafficking in scheduled drugs (Class B), 17–A M.R.S. § 1103(1–A)(A), and one count of illegal importation

1. Although it is clear that both Cloutier and the Auburn officers approached Donatelli's vehicle, there is no record evidence with regard to the instructions given to Donatelli as he exited his vehicle.

of scheduled drugs (Class C), 17–A M.R.S. § 1118(1), (2)(A).[2] Donatelli filed a motion to suppress, arguing that the evidence found in his vehicle was obtained in violation of his constitutional rights. After a hearing, the court denied the motion to suppress. The court determined that the informant's history of providing accurate information and the police corroboration of certain elements of the informant's tip, combined with Casavant's observation of the motor vehicle violations, gave the officers constitutional authority to order the warrantless stop of Donatelli's vehicle. Finding "nothing improper with respect to the number of officers involved or the circumstances in which the stop was made," the court concluded that both Donatelli's consent and the positive canine sniff test justified the vehicle search.

[¶ 9] Following the court's order, Donatelli entered a conditional guilty plea on the two charges pursuant to M.R.Crim. P. 11(a)(2) and filed this appeal.[3]

## II. DISCUSSION

[¶ 10] Our review of a trial court's denial of a suppression motion is bifurcated. "We review the denial of a motion to suppress for clear error as to factual findings and de novo as to issues of law." *State v. Reese*, 2010 ME 30, ¶ 4, 991 A.2d 806, 810. Because the facts here are undisputed, we review the court's ruling de novo. *State v. Bailey*, 2010 ME 15, ¶ 16, 989 A.2d 716, 721; *State v. Rizzo*, 1997 ME 215, ¶ 11 n. 6, 704 A.2d 339, 343.

[¶ 11] To conduct a constitutionally permissible traffic stop, an officer must

have, at the time of the stop, "an articulable suspicion that criminal conduct has taken place, is occurring, or imminently will occur, and the officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop [must be] objectively reasonable in the totality of the circumstances." *State v. Burgess*, 2001 ME 117, ¶ 7, 776 A.2d 1223, 1227 (quotation marks omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In this appeal, Donatelli concedes that law enforcement had reasonable suspicion to initiate a stop of his vehicle. Donatelli's argument is that police exceeded the bounds of a permissible *Terry* stop. He contends that the stop of his vehicle amounted to a de facto arrest, requiring not just reasonable suspicion but probable cause, which he maintains was lacking.

[¶ 12] "To qualify as a mere *Terry* stop, a detention must be limited in scope and executed through the least restrictive means." *United States v. Novak*, 870 F.2d 1345, 1352 (7th Cir.1989). In determining the constitutionality of an investigatory *Terry* stop, "we utilize a two-step analysis, considering whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Langlois*, 2005 ME 3, ¶ 7, 863 A.2d 913, 916 (quotation marks omitted); *see also State v. Gulick*, 2000 ME 170, ¶ 16, 759 A.2d 1085, 1089. " '[W]here police actions taken during the detention exceed what is necessary to dispel the suspicion that justi-

2. Count 1 of the indictment originally charged Donatelli with aggravated trafficking in scheduled drugs (Class A), 17–A M.R.S. § 1105–A(1)(D) (2009), but was amended to reflect the correct charge of unlawful trafficking in scheduled drugs (Class B), 17–A M.R.S. § 1103(1–A)(A) (2009).

3. The court sentenced Donatelli to five years of incarceration for each count, to be served concurrently, with all but one year suspended, and three years of probation.

fied the stop, the detention may amount to an 'arrest' and is lawful only if it is supported by probable cause.'" *Langlois,* 2005 ME 3, ¶ 8, 863 A.2d at 916 (quoting *Flowers v. Fiore,* 359 F.3d 24, 29 (1st Cir.2004)). This analysis is fact sensitive, and there is no bright line that distinguishes an investigative detention from an arrest. *Florida v. Royer,* 460 U.S. 491, 506, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

[¶ 13] Because Donatelli concedes that law enforcement had reasonable suspicion to believe that he was transporting cocaine, we are tasked with evaluating the second prong of the analysis: whether the action taken by police was "reasonably related in scope to the circumstances which justified the interference." *Langlois,* 2005 ME 3, ¶ 7, 863 A.2d at 916. This determination involves a "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *State v. Huether,* 2000 ME 59, ¶ 8, 748 A.2d 993, 996 (quotation marks omitted). In considering this issue, we are also mindful that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry,* 392 U.S. at 23, 88 S.Ct. 1868.

[¶ 14] We are persuaded that the circumstances justifying the stop of Donatelli's vehicle, including the significant State interests in detecting illegal drug trafficking and ensuring officer safety, warranted the actions taken by law enforcement. In arguing to the contrary, Donatelli focuses primarily on the number of police officers and vehicles involved in effectuating the stop. Although we agree that this fact is certainly relevant, "[m]ere numbers do not automatically convert a lawful *Terry* stop into something more forbidding." *United States v. Zapata,* 18 F.3d 971, 976 (1st Cir.1994); *see also Unit-*ed States v. Lee, 317 F.3d 26, 31 (1st Cir.2003) ("Although there were five officers on the scene, that fact, without more, does not lead inexorably to a conclusion that a de facto arrest occurred."). Rather, the reasonableness of police action must be judged in light of the circumstances that prompted the stop. *See Flowers,* 359 F.3d at 29–30.

[¶ 15] Investigative traffic stops "are especially fraught with danger to police officers." *Michigan v. Long,* 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Accordingly, the "reasonable use of backup officers is ... within the bounds of a *Terry* stop." *Flowers,* 359 F.3d at 30. Of particular concern here, Donatelli was not traveling alone and was suspected of transporting illegal drugs. *See Maryland v. Wilson,* 519 U.S. 408, 414, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ("[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car."); *United States v. Askew,* 403 F.3d 496, 507 (7th Cir.2005) (noting the "the inherent danger in stopping those suspected of drug trafficking"). At the suppression hearing, Agent McCormick testified that he believed the circumstances warranted calling the Auburn officers to assist Trooper Cloutier. We find no basis to question the reasonableness of this assessment.

[¶ 16] After stopping the vehicle, law enforcement acted prudently in securing Donatelli's detention. Donatelli admits that his vehicle was not blocked from leaving. *Cf. United States v. Quinn,* 815 F.2d 153, 156 (1st Cir.1987) ("[W]hile the blocking of a vehicle is relevant to the issue of custody, it w[ill] not necessarily elevate an investigatory stop into a *de facto* arrest requiring probable cause." (quotation marks omitted)). Although Donatelli was detained outside of his vehicle, an officer

may always require the occupants of a lawfully stopped vehicle to exit the vehicle without violating the Fourth Amendment. *See State v. DiPietro*, 2009 ME 12, ¶ 14, 964 A.2d 636, 640. The armed officers never drew their weapons, and Donatelli was never handcuffed. *Cf. Langlois*, 2005 ME 3, ¶¶ 9, 10, 863 A.2d at 916 (rejecting the defendant's argument that a de facto arrest occurred "when [the officer] ordered him at gunpoint to lie face down on the ground"). Indeed, there is no record evidence that the officers involved acted aggressively; Donatelli was described as calm and cooperative.

[¶ 17] We also find nothing unreasonable in the length and intrusiveness of the stop. *See United States v. Hensley*, 469 U.S. 221, 235–36, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Donatelli was detained for only minutes before he consented to the search. Moreover, upon securing Donatelli's consent, officers carried out their investigation by performing a minimally intrusive canine sniff test of the exterior of the vehicle. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (observing that "a sniff by a dog that simply walks around a car is much less intrusive than a typical search" (quotation marks omitted)); *Royer*, 460 U.S. at 500, 103 S.Ct. 1319 (explaining that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time"). These measures demonstrate an effort by law enforcement to minimize both the length of the detention and the investigation's intrusiveness. In other words, consistent with the limited intrusion allowed under *Terry*, officers "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

[¶ 18] Because Donatelli was not subjected to a de facto arrest, we need not consider whether the informant's tip established probable cause. In the course of conducting a valid *Terry* stop, law enforcement acquired constitutional authority to search Donatelli's vehicle by securing Donatelli's voluntary consent. *See State v. Kremen*, 2000 ME 117, ¶¶ 7–11, 754 A.2d 964, 967–68. Consequently, the court did not err in denying Donatelli's motion to suppress.

The entry is:

Judgment affirmed.