011132

STATE OF MAINE
CUMBERLAND, SS

CLERK'S OFFICE

2013 DEC 6 PM 1 40

STATE OF MAINE        CUMBERLAND, SS SUPERIOR COURT
CUMBERLAND, SS.        UNIFIED CRIMINAL DOCKET
                        DOCKET NO. PORSC-CR-13-25-05
                        JAW-CUM - 12/6/2013

STATE OF MAINE,

v.                                ORDER ON MOTION TO SUPPRESS

JONATHAN ANATRA,
        Defendant

BACKGROUND AND FACTS

This matter came before the Court for hearing on December 5, 2013 on defendant's motion to suppress. Defendant was present and represented by counsel, William Bly. Bud Ellis represented the state. The State charged the defendant with operating a motor vehicle while under the influence of intoxicants and alleged in the alternative a blood alcohol level of .15 grams in Count I and a blood alcohol level of .08 grams in Count II. Defendant contends in his motion that the State lacked reasonable, articulable suspicion and probable cause to pat him down during a traffic stop and to require him to perform field sobriety tests. Defendant also argues that the pat-down turned the stop into an arrest requiring probable cause to arrest, and any statements defendant made during or following the pat down should be suppressed.

The parties stipulated that the officer possessed reasonable articulable suspicion to stop the defendant's vehicle. The court began the hearing observing a video without any audio.[1] Because defendant's conduct captured on the vehicle is relevant to the issues raised by defendant, the court outlines her observations from the video. The court

_____

[1] There was no explanation for why there was no audio.

observed defendant's car come onto the Casco Bay Bridge from the Portland side of the bridge, accessing the bridge from the right-hand spur that merges into the bridge traffic. Defendant's vehicle came up onto the bridge at a high rate of speed relative to the earlier traffic and swung out to the left into the right travel lane, rather than proceed through the merge lane of travel. Defendant's vehicle proceeded in the right travel lane crossing the outer white line of the travel lane, traveling back into the travel lane, and then traveling on the outer white line as the vehicle proceeded south. The vehicle followed closely to the vehicle in front of it and frequently braked causing all the rear lights to come on. Just before the right hand turn off of the bridge, defendant pulled his vehicle over.

According to the video, Patrolman Michael Armstrong from the South Portland Police exited his vehicle and approached the driver window of Armstrong's vehicle. Armstrong spoke with defendant at the driver's window for some time. Another officer approached the stopped vehicle on the passenger side. Eventually defendant exited the vehicle and walked to the back of his vehicle with the officer. The two individuals spoke face to face and then the defendant turned around and spread his arms and feet. While the officer held defendant's hands to the small of defendant's back as if the defendant were handcuffed, the officer patted down the defendant with his other hand. The defendant then turned back around to the officer and watched as the officer walked off camera. The officer returned and the two individuals appear to speak with each other before the officer began the HGN, the first field sobriety test administered to defendant.

Patrol officer Armstrong testified, filling in some of what is missing from the video. Armstrong testified that while defendant was still in his vehicle, the officer noticed that the defendant slurred his words and had blood shot glassy eyes. When defendant was

asked for his license, registration and proof of insurance, the defendant handed the officer his license, military ID and a sales receipt. The front passenger assisted the defendant in attempting to find the correct documents.

Armstrong asked defendant where he was coming from. The stop occurred at approximately 1:00 A.M. Defendant stated he was picking up friends from the Old Port. The officer next asked how much he had to drink. Defendant denied he had anything to drink. When the officer asked a second time, defendant responded he had two shots at 11:30 P.M.

Before administering the field sobriety tests, the officer inquired whether defendant had taken any medication. Defendant responded, "Prozac." Defendant also advised the officer that he was wearing contacts, his footwear was comfortable and he could perform the tests. Defendant stated, he had a knee injury three months before, but he was able to walk. After the testing, defendant advised the officer that he placed himself as a "4" on a 0-10 alcohol scale and that he had 3 beers and 1 shot that evening.

Although Armstrong had no specific memory of why he conducted a pat down, he testified that consistent with his practice when about to administer a field sobriety test where the defendant is within 12 inches of him, he conducts a pat-down for officer safety. He does this to make sure a defendant is not armed. Nothing in this stop led the officer to believe that the defendant was or might be armed or dangerous. This was a routine traffic stop for suspicion of driving under the influence.

## DISCUSSION

In *State v. Langlois*, 2005 ME 3, ¶ 7, 863 A. 2d 913, the Law Court stated:

> In *Terry v. Ohio,* the United States Supreme Court held that limited governmental intrusions for the purpose of investigation are permissible under the Fourth

Amendment upon a showing of reasonable suspicion. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In determining the legitimacy of an investigatory search or seizure, we utilize a two-step analysis, considering "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. 1868; *see also State v. Hill*, 606 A.2d 793, 795 (Me.1992).

2005 ME at ¶. There is no question about the legitimacy of the stop at its inception because the parties stipulated that there was reasonable, articulable suspicion to stop the defendant's vehicle.

The question then is the scope of the search following the stop, that is whether the pat-down and the administration of the field sobriety tests were reasonably related in scope to the circumstances of the stop. Officer Armstrong's actions in stopping the vehicle were justified at their inception but his actions of patting-down the defendant were not reasonably related in scope to the circumstances which justified the interference in the first place. Up until the point that Officer Armstrong ordered defendant to turn around and put his hands behind his back and conducted a pat-down search, defendant was subjected to an investigatory detention. Although the frisk was performed out of a concern for officer safety when Armstrong administered the field sobriety tests, some on which take him within 12 inches of a defendant, Armstrong had no reasonable belief that this defendant was armed and dangerous. The United States Supreme Court has pronounced "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-27, 129 S. Ct. 781, 172 L. Ed. 694 (2009).[2] The circumstances of this case are not like

---

[2] Police safety during a *Terry* stop is a serious matter and investigative traffic stops can be fraught with danger to police officers. *Michigan v. Long*, 463 U.S. 1932, 1947, 193 S. Ct. 3469, 77 L.Ed. 1201 (1983). This stop however did not involve the risk inherent in stopping those suspected of, for example, drug trafficking. *See Donatelli*, 2010 ME 43.

the circumstances in *State v. Langlois*, 2005 ME 3, where law enforcement was investigating a report that gang members were holding a person hostage, or in *State v. Donatelli*, 2010 ME 43, where law enforcement was investigating interstate drug trafficking. This was a traffic stop for suspected operating under the influence with no indicia that he defendant was armed or dangerous. Without a reasonable belief that a crime of violence had occurred or that the defendant was armed, the officer's frisk was not reasonable. There is nothing in this defendant's conduct and disposition during the stop to support a finding that the frisk was justified based on reasonable articulable suspicion.

The determination whether law enforcement has exceeded the scope of the intrusion justified by the circumstances "involves a weighing of the gravity of public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *State v. Heuther*, 2000 ME 59, ¶ 8, 748 A. 2d 993, 996. In making this pronouncement, the Law Court was "mindful that 'it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.'" *State v. Donatelli*, 2010 ME 43, ¶ 13, 995 A. 2d 238, 242. Nevertheless, there must be a reasonable articulable suspicion that an individual is armed and dangerous to extend the stop to a frisk.

Therefore, the pat-down required probable cause. The law is well-settled that the "greater the intrusion of an arrest . . . requires probable cause." *Langlois*, 2005 ME at ¶ 8. "When police actions taken during the detention exceed what is necessary to dispel the suspicion that justified the stop, the detention may amount to an 'arrest' and is lawful only if it is supported by probable cause." *Id.*, quoting *Flowers v. Fiore*, 359 F. 3d 24, 29

(1st Cir. 2004).

Without deciding whether probable cause was required for the administration of the field sobriety tests because the pat-down turned this stop into a de facto arrest, the court concludes that Armstrong had probable cause to arrest defendant for operating a motor vehicle while under the influence of intoxicants at the time he asked the defendant to spread his arms and legs at the back of his car and conducted the pat-down. The probable cause standard has a very low threshold. "A person is guilty of operating under the influence if his senses are "impaired however slightly" or "to any extent" by the alcohol the person has to drink. *State v. Webster*, 754 A. 2d 976, 978, 2000 ME 115, ¶ 7. To meet the probable cause standard to arrest someone for operating under the influence, "an officer must have probable cause to believe that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person had to drink. A reasonable suspicion to support probable cause can exist independent of any evidence of actual impaired driving." *Id.*

Here, there was a combination of evidence of actual impaired driving and the officer's observations at the initiation of the stop that established that there was probable cause to believe that defendant's senses were affected to the slightest degree or to any extent by the alcohol that he had to drink. The video and the officer's articulated observations disclose actual impaired driving onto and on the bridge at 1:00 a.m., difficulty producing the appropriate documents, the blood shot glassy eyes, the slurred speech, and the initial denial of consumption of alcohol and then the admission of 2 shots at 11:30 P.M. On these observations, Armstrong had probable cause to believe defendant's senses were affected to any extent and to arrest defendant for operating under

the influence. Patrol Officer Armstrong lawfully searched the defendant with the pat-down and field sobriety tests based on probable cause to arrest for driving under the influence.

It is hereby ORDERED:

Defendant's Motion to Suppress is hereby DENIED.

Dated: December 6, 2013

Joyce A. Wheeler, Justice