MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 49
Docket:      Pen-18-189
Argued:      December 12, 2018
Decided:     April 4, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

AMANDA BENNETT-ROBERSON

HUMPHREY, J.

[¶1]   The State of Maine appeals from an order of the trial court (Penobscot County, *Budd, J.*) suppressing evidence obtained during a traffic stop after a Maine State Police trooper stopped and ordered Amanda Bennett-Roberson out of the motor vehicle she was driving so that he could administer field sobriety tests to her. Because we conclude that the motion court erred in restricting its legal analysis to evidence of the events and circumstances occurring at and prior to the moment that the trooper realized that the operator was not the person who was the subject of the complaint that led to the traffic stop, we vacate the suppression order and remand for the court to determine whether the trooper's subsequent actions were reasonably related in scope to the purpose of the initial stop.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the court's order, the following facts are supported by the evidence presented at the suppression hearing. *State v. Blier*, 2017 ME 103, ¶ 3, 162 A.3d 829. On the evening of August 2, 2017, the trooper received a report that a caller, who identified himself by name, had observed a "visibly intoxicated" man walking around the parking lot in front of a store and repeatedly getting in and out of a vehicle, which the caller described. The trooper believed that the caller's self-identification added to the credibility of the report. The trooper responded to the location and, from a distance, observed three or four individuals in the store's parking lot milling around a vehicle matching the description provided by the caller, several of whom were getting in and out of the vehicle.

[¶3] At the suppression hearing, the trooper testified that, from his vantage point, he was unable to determine the gender or discern any identifying characteristics of the individuals around the vehicle because of the glare from the setting sun. After several minutes, the trooper observed three people get into the vehicle, which then exited the parking lot onto a public way.

[¶4] The trooper did not observe any erratic operation or traffic infractions, but immediately activated the cruiser's blue lights to stop the

vehicle because he believed that it was being operated by the intoxicated male. The vehicle pulled over promptly and appropriately.

[¶5]    When the trooper approached the vehicle, he "immediately" realized that the driver was a female, not a male.  There were two male passengers in the vehicle—one was seated in the front, the other in the rear.  At the trooper's request, the operator produced the vehicle's registration, but she did not have her license and said it was at her home.  The operator appeared to have a "droopy" look to her face and her speech was slurred.  The trooper, who is a certified drug recognition expert, testified that his observations suggested possible drug impairment.  The operator of the vehicle, Bennett-Roberson, denied consuming alcohol but admitted that she had taken prescription medication.  She did not identify the medication she had taken.  The trooper then asked her to exit the vehicle to conduct field sobriety tests.[1]

[¶6]  Bennett-Roberson was arrested for operating under the influence (Class D), 29-A M.R.S. § 2411(1-A)(A)(1) (2018), and operating a motor vehicle without a license (Class E), 29-A M.R.S. § 1251(1)(A) (2018).

---

[1] The court noted in its order that the "parties agree that this was the last interaction between the Defendant and [the trooper] that is of relevance to the Defendant's motion."

4

[¶7] On February 28, 2018, Bennett-Roberson filed a motion to suppress all evidence stemming from the stop of her vehicle. She argued that the trooper lacked a reasonable and articulable suspicion to initiate the stop and did not have a reasonable and articulable suspicion to order her out of the vehicle to conduct further investigation—including field sobriety testing—because his suspicion that an intoxicated male was operating the vehicle dissipated as soon as he realized that the operator was a female.[2] The State argued that the trooper was justified in initiating the stop and in ordering Bennett-Roberson out of the vehicle because his order was reasonably related to the basis for the initial stop.

[¶8] The court granted Bennett-Roberson's motion, concluding that the initial seizure—the vehicle stop—was valid, but the subsequent investigatory seizure—the license check and the trooper's order that she exit the vehicle— was not, and suppressed "[a]ll evidence gathered from the point at which the [trooper] determined the driver of the vehicle to be a female." The court reasoned that, as soon as the trooper realized that the driver was female, the "basis for the stop ceased to exist" because his concerns that an intoxicated

---

[2] Bennett-Roberson challenged the validity of the initial stop at the suppression hearing but concedes on appeal that the stop was valid.

male was operating the vehicle under the influence were "no longer supported" by the facts then available to him. The State filed a timely notice of appeal with the approval of the Attorney General, pursuant to 15 M.R.S. § 2115-A(1), (5) (2018) and M.R. App. P. 21(b).

## II. DISCUSSION

[¶9] Neither party challenges the facts found by the court. The State disputes only the court's legal conclusion that the trooper's investigation after the stop was not reasonable because it was not supported by the information underpinning the trooper's justification for the initial stop—that an intoxicated male was operating the vehicle. When a court grants a motion to suppress based on undisputed facts and the only question involves a legal conclusion, we review the motion court's decision de novo. *State v. Stade*, 683 A.2d 164, 165 (Me. 1996).

[¶10] Determining the legitimacy of an investigatory seizure requires a two-part analysis: (1) whether the stop was justified at its inception and, if so, (2) whether the officer's actions taken after the initial stop were "reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Hill*, 606 A.2d 793, 795 (Me. 1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)); *see also State v. Huether*, 2000 ME 59, ¶ 8, 748 A.2d 993.

6

Because neither party challenges the validity of the initial stop on appeal, we address only the second part.

[¶11] The reasonableness of an officer's actions after an initial seizure is measured by "a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Hill*, 606 A.2d at 795 (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979)). The reasonableness of an officer's post-seizure actions is not limited to the reason for the stop; if, during an otherwise valid stop, an "officer discovers additional evidence of possible wrongdoing, he may expand his inquiry as suggested by this new information." *State v. Garland*, 482 A.2d 139, 144 (Me. 1984).

[¶12] We have addressed similar questions about the reasonableness of an officer's actions following an otherwise valid traffic stop where the basis for the stop dissipates *after* the stop. For example, in *State v. Hill,* an officer observed a truck being driven with no rear bumper or discernible rear license plate, which is a traffic violation. *See* 606 A.2d at 794. The officer followed the vehicle into a parking lot. *Id.* As the officer approached the truck, he observed that it did, in fact, have a license plate in the rear window. *Id*. at 794-95. The officer nevertheless initiated contact with the operator and asked for his

driver's license and registration. *Id.* at 795. This interaction led the officer to suspect that the operator was under the influence of alcohol. *Id.* We rejected Hill's contention that the police had an "affirmative duty" to discontinue the investigation because the basis for the stop—a missing license plate—dissipated before the officer contacted Hill, and held that, even though the justification for the initial stop dissipated when the officer noticed the license plate, a valid seizure had already occurred. *Id.* We explained that, had the basis for the stop vanished *before* the seizure, the officer's conduct would have been unreasonable. *See id.* In determining whether this subsequent action was reasonable, we weighed the State's interests in policing unlicensed and unregistered drivers against the minimal degree of intrusion a license check presented to the driver once he was already subject to a valid seizure, and ruled that a license check was reasonable under those circumstances. *Id.*

[¶13] Similarly, in *State v. Huether*, a police officer observed a driver whom he believed to be a person he knew. 2000 ME 59, ¶ 2, 748 A.2d 993. The officer checked the vehicle's registration and learned that it was registered to the person and that the person's license was under suspension. *Id.* ¶ 3. The officer made contact with the operator of the vehicle in a parking lot and asked for identification, which revealed the operator to be a different person,

John Huether. *Id.* ¶¶ 3-4. Huether's license was also suspended. *Id.* ¶ 4. We upheld Huether's conviction for operating after suspension because the officer's request for identification was reasonably related to the circumstances justifying the initial stop and the officer realized that he had been mistaken in his identification of the operator only after he made a valid stop. *Id.* ¶ 7-8.

[¶14] In each case, we balanced the public interest served by the seizure against the severity of the resulting interference imposed on the individual. *Id.* ¶ 8*; Hill,* 606 A.2d at 795. And, in each case, we held that the officer's subsequent act of requesting the operator's license and the vehicle's registration information was reasonably related to the circumstances justifying the initial stop because there is a strong state interest in ensuring that drivers are properly licensed and registered and the intrusion of asking a motorist for such documentation is minimal. *Huether*, 2000 ME 59, ¶ 8, 748 A.2d 993; *Hill*, 606 A.2d at 795.

[¶15] Here, the motion court concluded that once the trooper realized that the operator was not the male he initially suspected of operating under the influence, the "basis for the stop ceased to exist" because the trooper's concerns were "no longer supported by any information" available to him at the time of the stop. The court's analysis was incomplete.

[¶16] Contrary to the court's determination, the basis for the stop did not cease to exist the moment the trooper realized that the operator was a female. As Bennett-Roberson acknowledges, the trooper's request for her license and registration was a "minimal further intrusion" in light of the valid traffic stop. *See Huether*, 2000 ME 59, ¶ 8, 748 A.2d 993; *Hill*, 606 A.2d at 795. The court erred in not determining the reasonableness of the prolonged detention by considering the additional information obtained by the trooper during the license and registration check after he initiated the valid stop.

[¶17] Further, because the "scope of a[n officer's] inquiry and the permissibility of continuing to press the on-going investigation necessarily depend upon the continuing flow of information coming to the officer's attention after the start of the originally undertaken investigation," the court should have considered whether the trooper was entitled to "expand his inquiry as suggested by [the] new information" he obtained from his interactions with Bennett-Roberson during the license check. *Garland*, 482 A.2d at 144. This information is relevant to whether the trooper had sufficient basis to order Bennett-Roberson out of the vehicle.[3] *See id.*

---

[3] We do not need to reach Bennett-Roberson's alternative argument that, even if the trooper's order to exit the vehicle was valid, the trooper lacked reasonable and articulable suspicion to order her to undergo field sobriety tests.

[¶18]  We therefore vacate the suppression order and remand for the court to complete its suppression analysis by considering all of the evidence presented at the suppression hearing, including evidence concerning what the officer saw or heard up until he ordered Bennett-Roberson to exit her vehicle. *See State v. Hewes*, 558 A.2d 696, 701 (Me. 1989).  In this analysis, the court must determine whether the trooper obtained any new information that gave rise to a suspicion that justified his order to exit the vehicle and, after weighing the public interest served by the investigative seizure against the severity of the interference imposed on Bennett-Roberson's liberty, whether the trooper's order was "reasonably related in scope to the circumstances which justified the interference in the first place."  *Hill*, 606 A.2d at 795 (quotation marks omitted); *Huether*, 2000 ME 59 ¶ 8, 748 A.2d 993.

The entry is:

> Judgment granting the motion to suppress vacated.  Remanded for further proceedings consistent with this opinion.

R. Christopher Almy, District Attorney, and Mark A. Rucci, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellant State of Maine

Tina Heather Nadeau, Esq. (orally), The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellee Amanda Bennett-Roberson

Penobscot County Unified Criminal Docket docket number CR-2017-20438
FOR CLERK REFERENCE ONLY