STATE OF MAINE                          UNIFIED CRIMINAL COURT
KENNEBEC, SS.                           AUGUSTA
                                        DOCKET NO. CR-2019-1347


STATE OF MAINE

V.                                      **ORDER ON MOTION TO SUPPRESS**

JAMES R. LAWRENCE

## INTRODUCTION

This matter is before the court on the Defendant's Motion to Suppress dated December 3, 2019. An evidentiary hearing on the motion was held on October 16, 2020. Trooper Jacob Roddy of the Maine State Police testified.

Based on the evidence presented at the hearing, the court makes the following findings of fact.

## FINDINGS OF FACT

Sometime around 4 or 5 o'clock in the morning of June 28, 2019, Trooper Roddy was dispatched to the scene of a motor vehicle accident in Wayne. Fire and rescue personnel were already there. The Defendant (James Lawrence) was inside an ambulance. Trooper Roddy was told by the rescue personnel that they could smell the odor of alcohol coming from Lawrence, and Roddy himself also smelled it. He also noted that Lawrence's eyes were glassy and bloodshot.

Lawrence declined medical treatment for any injuries. When asked by Roddy what had happened, Lawrence said that he got lost, missed a turn and ended up in a ditch by the side of the road. He told Roddy that the accident happened around 10:30 or 11:00 p.m. the previous evening and "he was just going to sleep it off." He told Roddy that he'd had 3 or 4 beers. Roddy had Lawrence perform some standard field

sobriety tests, including horizontal gaze nystagmus (HGN), the walk and turn and the one-leg stand. Roddy observed numerous clues.

Trooper Roddy then asked Lawrence to describe his level of sobriety at the time of the accident on a scale of 0 to 10, with zero being "stone cold sober" and ten being the "most drunk in his life." Lawrence replied: "3 or 4." It is this question, and only this question, that Lawrence seeks to suppress from evidence.

Trooper Roddy acknowledged during cross examination that this question is one that he routinely asks when investigating a possible impaired driving case, but he admitted that it is not taught at the Maine Criminal Justice Academy and is not mentioned or approved in the NITSA manual. He also agreed that the "scale of 0 to 10" question is not quantified, in the sense that someone could have a BAC of .02, yet also be the "most drunk in his life."

Trooper Roddy testified that he believed that Lawrence was likely impaired and that he intended to arrest him, even before he asked the "0 to 10 scale" question.

## DISCUSSION

Lawrence contends that the "0 to 10 scale" question constituted custodial interrogation, which was not preceded by the administration of *Miranda* warnings and a voluntary waiver thereof. The State counters that, prior to his arrest, Lawrence was only subjected to a limited *Terry*-type investigatory detention that required no *Miranda* warnings.

Both the United State Supreme Court and the Law Court have stated that a brief roadside stop is the equivalent of a so-called *Terry* stop and that "[p]ersons temporarily detained pursuant to such stops are not 'in custody' for purposes of *Miranda*." *State v, Bragg,* 2012 ME 102, ¶ 9, 48 A. 3d 769 *citing Berkemer v. McCarty,* 468 U.S. 420, 439-40 (1984). Such stops are justified if based upon reasonable articulable suspicion of criminal activity and may also be based upon public safety concerns, including the investigation of a motor vehicle accident.

2

*Bragg*, 2012 ME 102, ¶ 10; See *State v. Donatelli*, 2010 ME 43, ¶ 11, 995 A. 2d 238; *State v. Pinkham*, 565 A. 2d 318, 319-20 (Me. 1989). As the First Circuit Court of Appeals has noted, "[t]here is no scientifically precise formula that enables courts to distinguish between valid investigatory stops and de facto arrests." *United States v. Owens*, 167 F. 3d 739, 748-49 (1ª Cir. 1999) *quoting United States v. Zapata*, 18 F. 3d 971, 975 (1ª Cir. 1994). Nevertheless, the Law Court has provided guidance in this area of the law.

"In order for statements made prior to a *Miranda* warning to be admissible, the State must prove by a preponderance of the evidence, that the statements were made while the person was not in custody, or was not subject to interrogation." *State v. Bragg*, 2012 ME 102, ¶ 8, 48 A.3d 769 *quoting State v. Bridges*, 2003 ME 103, ¶ 23, 829 A.2d 247. *See also State v. Poblete*, 2010 ME 37, ¶ 21, 993 A.2d 1104.

The Law Court has stated that the "ultimate inquiry" regarding whether someone is in custody for *Miranda* purposes "is whether a reasonable person in the shoes of [Lawrence] would have felt he or she was not at liberty to terminate the interrogation and leave or if there was a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Prescott*, 2012 ME 96, ¶ 10, 48 A.3d218 *quoting State v. Poblete*, 2010 ME 37, ¶ 22, 993 A.3d 1104.

The test is "purely objective" and a variety of factors must be considered in their "totality, not in isolation." *State v. Prescott*, 2012 ME 96, ¶ 11; *State v. Dion*, 2007 ME 87, ¶ 23, 928 A.2d 746. The Law Court has consistently identified the following, non-exhaustive list of factors that are to be considered on the custody issue:

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

3

(4) subjective views, beliefs or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

Lawrence focuses on Trooper Roddy's testimony that he subjectively believed or knew that Lawrence was likely impaired, and that he subjectively intended to arrest him even before he asked the "0 to 10 scale" question. He maintains that that this testimony shows that Roddy had probable cause to arrest him and that he intended to do so.

Lawrence's argument, however, misses the mark because Trooper Roddy never expressed or communicated to Lawrence his subjective beliefs regarding the existence of probable cause and never manifested to him any intention to arrest him for operating under the influence.

The Law Court's jurisprudence in this area is clear. The test is "purely objective," and the subjective beliefs or intentions of the officer are not relevant to the inquiry unless they are communicated to the defendant. In the court's view, Trooper Roddy's investigation of Lawrence's motor vehicle accident clearly fit within the parameters of a *Terry* stop and detention, including the "0 to 10 scale"

4

question. Accordingly, no *Miranda* warnings were required because there was no custodial interrogation at that point in time. Moreover, the other factors noted above, although not a mere checklist, weigh in favor of a finding that no custodial interrogation occurred up to the point when Lawrence was arrested by Trooper Roddy.

## CONCLUSION

The entry is: Defendant's Motion to Suppress dated December 3, 2019 is DENIED.[1]

Dated: October 27, 2020.

William R. Stokes
Justice, Superior Court

Entered on the docket 10/27/20

---

[1] On October 6, 2020, Lawrence filed a Motion for Further Discovery seeking a report of any expert witness the State intends to call at trial. Although the motion was not in order to be heard on October 16, 2020, the parties and the court did engage in a fairly full discussion of it. The court would request the State to inform it if it wishes to oppose the motion so that a hearing can be scheduled on it or the court can rule on the motion without a hearing.