2012 ME 102

**STATE of Maine**

v.

**Tammy A. BRAGG.**

Supreme Judicial Court of Maine.

Submitted On Briefs: May 24, 2012.

Decided: Aug. 2, 2012.

Robert J. Levine, Esq., Strout & Payson, P.A., Rockland, on the briefs, for appellant Tammy Bragg.

Geoffrey Rushlau, District Attorney, Prosecutorial District Six, Rockland, on the briefs, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Tammy Bragg appeals from a judgment of conviction for operating under the influence (Class D), 29–A M.R.S. § 2411(1–A)(A) (2011), entered by the Superior Court (Knox County, *Hjelm, J.*) following a jury trial. Bragg contends that the court erred when it refused to suppress statements she made at the scene of the accident and at the police station. We affirm the judgment.

## I. BACKGROUND

[¶ 2] On the evening of March 11, 2009, Tammy Bragg went off a rural road in Rockport while driving her car home from a restaurant. Not long thereafter, Sergeant Travis Ford came across the accident while on routine patrol.

[¶ 3] When Ford approached Bragg's vehicle, Bragg assured him she was not injured. After verifying that Bragg wanted a wrecker, Ford called for one to remove the car. Ford asked Bragg to produce her license and to describe how she went off the road. Bragg stated that she was not sure how she went off the road but thought that she might have hit a patch of black ice.

[¶ 4]   After asking Bragg for her insurance information, Ford had her sit in his cruiser while he copied down her information.   According to Ford, he detected the odor of alcohol on Bragg while she was retrieving her insurance information.   Inside the cruiser, he "noticed she was speaking with like a thick tongue, slightly slurred speech," and again smelled alcohol on her breath.   In response to Ford's inquiry, Bragg stated that she had consumed two margaritas at dinner.   While in the cruiser, Ford conducted a horizontal gaze nystagmus test to determine Bragg's sobriety.   During the test, Ford observed that Bragg's eyes were "kind of red, glassy-looking, or watery-looking."   Following this test, he asked Bragg to recite a portion of the alphabet, as well as to count backwards from sixty-seven and to stop at fifty-two.   According to Ford, Bragg did not stop at the points she was supposed to in both tests and "jumbled" some of the letters of the alphabet.   At some point during these tests, the wrecker arrived at the scene.

[¶ 5]   About the time Ford finished conducting these tests, Bragg's husband arrived.   After asking for permission to leave the cruiser, Bragg exited the vehicle and walked towards her husband.   Ford noted that she seemed unsteady.   At this point, Ford advised Bragg that she was under arrest and transported her to the Camden Police Station to take an intoxilyzer test.

[¶ 6]   At the police station, Bragg took the intoxilyzer test, and her blood alcohol content (BAC) was .13%. When Ford informed Bragg of the test results and that the presumptive level of intoxication in Maine is .08%, Bragg responded that she had thought when she ordered the second margarita at dinner it was probably a bad idea.   Bragg was charged with operating

under the influence (Class D), 29–A M.R.S. § 2411(1–A)(A).

[¶ 7]   On June 1, 2009, Bragg filed a motion to suppress on the grounds that the statements she made in the cruiser and at the police station were given without the necessary *Miranda* warnings. At a hearing on May 20, 2010, the Superior Court denied the motion regarding whether the statements should be suppressed for lack of *Miranda* warnings.   The court found that Bragg was not in custody when she made her first statements at the scene of the accident.   Additionally, the court determined that the alphabet and counting field sobriety tests "were not interrogation for Fifth Amendment purposes."   As for the statements made after Bragg's formal arrest, the court determined that the officer's statement to her about the test result was "not the functional equivalent of a question."   The case proceeded to a jury trial, which was held on September 14, 2011, and Bragg was found guilty of Class D operating under the influence.   The court ordered her to pay an $800 fine and suspended her license for ninety days. This appeal followed.

## II.   DISCUSSION

[¶ 8]   "In order for statements made prior to a *Miranda* warning to be admissible, the State must prove, by a preponderance of the evidence, that the statements were made while the person was not in custody, *or* was not subject to interrogation." *State v. Bridges,* 2003 ME 103, ¶ 23, 829 A.2d 247; *see also Miranda v. Arizona,* 384 U.S. 436, 467–77, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).   Whether a person was in custody depends on "whether a reasonable person, standing in the defendant's shoes, would have felt he or she was not at liberty to terminate the interrogation and leave." *Bridges,* 2003 ME 103, ¶ 26, 829 A.2d 247 (quotation

marks omitted). A trial court's factual findings on a motion to suppress are reviewed for clear error, while "the ultimate determination of whether the statement should be suppressed" is reviewed de novo. *State v. Dominique*, 2008 ME 180, ¶ 10, 960 A.2d 1160 (quotation marks omitted).

## A. Statements Made at the Accident Scene

[¶ 9] On appeal, Bragg contends that, when she made the statements to Ford at the accident scene concerning the amount of alcohol she had consumed and underwent sobriety tests, she was in custody and was entitled to *Miranda* warnings. Conversely, the State argues that the court properly concluded that Bragg "was the subject of what was essentially a roadside stop which was brief and temporary." In other words, the State argues that Bragg was subject only to an investigatory detention, more commonly known as a *Terry* stop. *See State v. Donatelli*, 2010 ME 43, ¶¶ 11–12, 995 A.2d 238. This distinction is key because, as a general rule, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

[¶ 10] "To qualify as a mere *Terry* stop, a detention must be limited in scope and executed through the least restrictive means." *Donatelli*, 2010 ME 43, ¶ 12, 995 A.2d 238 (quotation marks omitted). Brief investigatory detentions are justified when they are based on "specific and articulable facts," and can be solely for safety concerns as part of the "community caretaking function[ ]" of police officers, which includes "investigat[ing] vehicle accidents in which there is no claim of criminal liability." *State v. Pinkham*, 565 A.2d 318, 319–20 (Me.1989) (quotation marks omitted). As we said in *State v. Gulick*, 2000

ME 170, ¶ 10 n. 4, 759 A.2d 1085, "[a] brief restriction on a citizen's right to walk (or drive) away is usually referred to as a detention or a stop in order to distinguish the more limited restriction from a restriction commensurate with arrest."

[¶ 11] Here, Ford initially approached Bragg when he happened upon her car that was off the road and facing the opposite direction of traffic, indicating that she had been in an accident. After inquiring as to whether she was safe and needed a wrecker, Ford then asked for her license and insurance information in conjunction with his investigation into the accident. Upon smelling alcohol on Bragg's breath and noticing other signs of intoxication, he administered sobriety tests. As the trial court stated, "[Bragg] was detained [for] Fourth Amendment purposes, but not for Fifth Amendment purposes, which would trigger Miranda." This brief detention to investigate is consistent with the characteristics of a *Terry*-type stop that does not rise to the level of custody for Fifth Amendment purposes. *See Berkemer*, 468 U.S. at 439–40, 104 S.Ct. 3138.

[¶ 12] This situation is distinguishable from the recent case of *State v. Prescott*, 2012 ME 96, ¶¶ 3–7, 48 A.3d 218, where an officer took the defendant back to the accident scene from her home before another officer asked her questions regarding the accident and administered sobriety tests. We noted that Prescott was not subject to "a simple *Terry* stop involving a brief, limited intrusion into Prescott's liberty, as likely would have been the case had Prescott been with her car when police arrived and the same sequence of events had then taken place," *id.* ¶ 13, but rather was in custody for Fifth Amendment purposes, *id.* ¶ 16. Bragg presents exactly the scenario contemplated in *Prescott*. Unlike Prescott, who was taken back to the scene of the accident, Bragg was already at the

scene of the accident when Ford began his initial investigation. During this detention, Ford noted the smell of alcohol on Bragg and observed that she was slurring her words while giving him her insurance information, and as a result he administered sobriety tests. The trial court correctly held that this situation did not amount to custody for *Miranda* purposes.

[¶ 13] Because *Miranda* was not required, it is not necessary to address Bragg's argument regarding the testimonial nature of her responses to alphabet and counting sobriety tests. Even if Bragg had been in custody, however, her additional contention that the alphabet and counting tests were testimonial would not be persuasive, as a defendant's performance on field sobriety tests is nontestimonial in nature. *State v. Millay,* 2001 ME 177, ¶ 15, 787 A.2d 129.

B. Statements Made at the Police Station

[¶ 14] Bragg also contends that Ford's statement to her that her test result was a BAC of .13%, in conjunction with his statement that the presumptive intoxication level in Maine is .08%, was the functional equivalent of direct questioning and reasonably likely to elicit an incriminating response.

[¶ 15] For *Miranda* warning purposes, an interrogation "encompasses not only direct questions, but also ... any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Dominique,* 2008 ME 180, ¶ 12, 960 A.2d 1160 (quotation marks omitted) (alteration in original); *see also Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (stating that "interrogation" for *Miranda* purposes includes both direct questioning and the functional

equivalent). Because the parties agree that Bragg was in custody at the time she took the intoxilyzer test and made her incriminating statement, "[t]he State ... bears the burden of establishing by a preponderance of the evidence that a *Miranda* warning was not required." *State v. Brann,* 1999 ME 113, ¶ 12, 736 A.2d 251.

[¶ 16] Although we have not yet addressed this exact issue, other courts have recognized that simply presenting a defendant with evidence against her does not necessarily constitute an interrogation for *Miranda* purposes. *See, e.g., Caputo v. Nelson,* 455 F.3d 45, 50–51 (1st Cir.2006) (recognizing that other courts have determined that not all declaratory statements by police regarding the evidence and charges qualify as interrogation); *United States v. Payne,* 954 F.2d 199, 202 (4th Cir.1992) ("[T]he *Innis* definition of interrogation is not so broad as to capture within *Miranda's* reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."); *Easley v. Frey,* 433 F.3d 969, 974 (7th Cir.2006) (citing *Payne* with approval and holding that a trial court did not erroneously admit the defendant's statements in response to "a matter-of-fact communication of the evidence against [the defendant]"); *but see United States v. Poole,* 794 F.2d 462, 466–67 (9th Cir.1986) (noting that the district court properly excluded statements made by a defendant where he was shown surveillance photographs after invoking his right to silence). Although Bragg argues that the information was given in such a manner as to be reasonably likely to elicit an incriminating response, Ford's statement that her blood alcohol level was over the state limit was, in this context, "a matter-of-fact communication of the evidence." *See Easley,* 433 F.3d at 974. As the State correctly points

out, pursuant to Maine law, Bragg was entitled to that information at her request. *See* 29–A M.R.S. § 2521(9) (2011) ("On request, full information concerning a test must be made available to the person tested or that person's attorney by the law enforcement officer."). Given that Bragg was entitled to that information, the officer's simple statement relating that information, though unrequested, does not constitute a statement reasonably likely to elicit an incriminating response.

[¶ 17] Because Bragg was not subject to interrogation for Fifth Amendment purposes, the court's suppression decision is affirmed.

The entry is:

Judgment affirmed.