STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-16-30254

STATE OF MAINE

v.

JUDGMENT

DANA HUGHES,

Defendant

## BACKGROUND

Jury-waived trial on the motion to suppress and complaint was held on January 18, 2017. For the following reasons, the court denies the motion to suppress and finds defendant not guilty.

## FACTS

Sergeant David Hall has worked for the Cumberland County Sheriff's Department for 25 years. He was trained on operating under the influence cases at the Maine Criminal Justice Academy in 1982. He has taken no other courses or had any additional training, except on the job training. He is not deemed proficient in the horizontal gaze nystagmus test. He is trained in the field sobriety tests considered standard in 1982.

On July 1, 2016, he was dispatched to a possible personal injury accident on Route 35 in Naples, Maine. As he headed south, he saw the vehicle 30 feet off the road over an embankment. The driver's side of the vehicle had substantial damage. Based on his measurements, the vehicle left the road 761 feet before it stopped. (State's Ex. 2.)

Defendant's sister, Kathryn Hughes, was traveling on Route 35 behind defendant en route to family property on Long Lake in Harrison. Ms. Hughes lives in Winchester, Massachusetts. She has an M.B.A. from Columbia and owns a marketing consulting firm.

1

She described Route 35 in the area where defendant's vehicle left the road as pretty narrow and very winding with bends and turns. When she realized the vehicle off the road was her brother's vehicle, she turned around and returned to the scene.

The Naples rescue and fire personnel were at the scene. Sgt. Hall located a man sitting in the back of the rescue vehicle and asked what happened. The man did not answer. When Sgt. Hall asked again, the man pointed to his forehead, on which there were abrasions. When asked how the accident happened, the man, who identified himself as Dana Hughes, stated he swerved to miss a bear. Defendant told his sister he swerved to avoid a large object. Defendant also told her he did not remember if he hit a tree because he had been thrown around in his vehicle before it stopped. (State's Ex. 2, Images 1-4.)

Defendant sometimes did not answer Sgt. Hall's questions. Defendant stated a number of times he did not hear the questions and did not hear Sgt. Hall. When defendant stated he could not hear, he stated he was "not busting [Sgt. Hall's] balls." Sgt. Hall noted defendant's eyes were blood shot and the Sgt. Hall smelled "just a slight" odor of an intoxicating beverage coming from defendant's area.

When Ms. Hughes arrived at the scene, she found defendant in the rescue vehicle. He looked like he was in shock. She spoke to him but he did not respond.

Sgt. Hall left the rescue vehicle and went to defendant's vehicle to begin the accident report. Sgt. Hall returned to the rescue vehicle and to remove defendant, who lay on a gurney. When Sgt. Hall said he had to remove defendant from the vehicle, defendant just looked at Sgt. Hall and did not get out of the vehicle. Sgt. Hall told defendant a second time to get out or Sgt.

Hall would remove defendant from the vehicle because defendant was not cooperating. Defendant got out of the vehicle.[1] Sgt. Hall did not ask defendant if he was injured.

Sgt. Hall asked defendant how much he had had to drink. Sgt. Hall testified on direct examination that defendant replied, "two beers" at Bray's, which is a restaurant pub that serves alcohol. On cross-examination, Sgt. Hall testified that defendant replied, "two drinks." When asked again why his vehicle crashed, defendant replied he swerved to hit a moose.

Sgt. Hall then asked defendant to perform field sobriety tests but did not explain what that entailed. Defendant said he could. Prior to administering any tests, Sgt. Hall did not ask defendant if he had any injuries, medical conditions, problems with balance, or physical impairments that could affect his ability to perform the tests. Ms. Hughes described defendant's severe disabilities to include two damaged discs and an arthritic hip. He walks with a great deal of pain and with a clear limp while moving from side to side. He also is hearing impaired with progressive hearing deterioration.

Sgt. Hall asked again what defendant had to drink. Defendant replied "a couple." Sgt. Hall asked what "a couple" meant and defendant did not answer. Sgt. Hall asked defendant to rate how drunk he was on a scale of one to ten with one as having had no alcohol and ten as being falling down drunk. Defendant did not understand the question and said he did not understand what Sgt. Hall wanted. Sgt. Hall asked again for a rating and defendant again did not understand the question.

Sgt. Hall explained the heel to toe test, which, according to Sgt. Hall, defendant appeared to understand. He raised his hands during the instructional phase and began the test before the instructional phase was completed. Sgt. Hall did not tell defendant not to start the test until he was told to start. Sgt. Hall told defendant to stop and start again. Defendant replied he would not

---

[1] For purposes of the motion to suppress, defendant argues he was in custody at this time.

do the tests. Sgt. Hall did not offer any other tests, including the finger dexterity test, which he will use if someone cannot walk. Defendant did not complain to Sgt. Hall of injuries or pain or request to see the rescue personnel again.

Ms. Hughes saw defendant interact with Sgt. Hall when defendant was walking away from and then walking toward Sgt. Hall. Defendant was walking with great difficulty and continued to look like he was in shock.

Sgt. Hall placed defendant under arrest, handcuffed his hands behind his back, and placed him on the cruiser. Defendant stiffened his arm. Sgt. Hall stated he would dump defendant on the ground if he did not loosen his arm.

After defendant was placed in the cruiser, Ms. Hughes approached Sgt. Hall and identified herself as defendant's sister. In an effort to assess the situation, she asked what had happened and where her brother would be taken. Ms. Hughes described Sgt. Hall as agitated, aggravated, and belligerent. His shoulders were hunched up and he leaned toward her. His elevated tone of voice and demeanor caused Ms. Hughes to feel uncomfortable and she backed away. She remained low key and calm because she did not want Sgt. Hall agitated with her, which, she realized, would not help the situation.

When Sgt. Hall and defendant were in the cruiser, Ms. Hughes asked Sgt. Hall to speak to her family's attorney, James McNulty, who was connected on her cell phone. Attorney McNulty graduated from Suffolk Law School in 1978. He has had a general practice, including criminal defense, in his own firm and then on his own. Since 1993, he has been a sole practitioner representing small and mid sized businesses. He has represented members of the Hughes family.

Ms. Hughes discussed her observations with Attorney McNulty. She called him because defendant had been arrested and she was unsure of the procedure. Sgt. Hall seemed annoyed and

4

disgusted with the request to speak to the attorney. Sgt. Hall first declined because he was busy but then spoke briefly to the attorney. Attorney McNulty hoped to speak to defendant but Sgt. Hall declined that request twice. Attorney McNulty described Sgt. Hall's demeanor and tone as cautious, hostile, and defensive initially but increasingly uncooperative and angry. By the end of the conversation, Attorney McNulty described Sgt. Hall's tone as combative. He accused Attorney McNulty of telling the sergeant how to proceed, which Attorney McNulty did not do. Once defendant was arrested, Attorney McNulty thought he had the right to speak to defendant, which angered Sgt. Hall, who said Attorney McNulty had no right to speak to defendant. Attorney McNulty's tone and demeanor remained polite and respectful but persistent. Sgt. Hall terminated the phone call. Attorney McNulty never spoke to defendant during the call.

At trial, Sgt. Hall testified he was not sure what defense counsel meant when asked whether the conversation at the scene with defendant's sister was cordial. Sgt. Hall testified at an earlier proceeding in the case that the conversations with Ms. Hughes and Attorney McNulty were perfectly cordial.

Sgt. Hall transported defendant to the Cumberland County jail. Although the Bridgton Police Department was 20 or 25 minutes from the scene, Sgt. Hall transported defendant to the Cumberland County jail, which was an hour from the scene. En route, defendant stated he swerved to miss a person. The cruiser had a solid glass cage with an open center to permit the officer to hear a defendant during transport. The back doors cannot be opened unless the officer opens the doors.

Defendant complained the handcuffs hurt him and his arms were numb. Sgt. Hall called for backup but none was available for some time so he put defendant in a waist belt. Sgt. Hall had checked the cuffs for tightness before he double locked them. He was able to insert one

5

index finger, which was satisfactory based on his training. Sgt. Hall stated defendant's wrists were red but the cuffs were not too tight.

In anticipation of the intoxilyzer test, Sgt. Hall checked defendant's mouth and waited fifteen minutes. Sgt. Hall entered defendant's information and defendant then stated he would not perform the test. Sgt. Hall read the implied consent form and testified defendant understood the questions and did not take the test. Sgt. Hall entered a refusal.

Sgt. Hall testified he saw blood dripping from defendant's wrists and pooling on the floor of the jail and asked defendant whether he caused himself to bleed. Sgt. Hall concluded defendant had injured his wrists by twisting his wrists back and forth during transport. Sgt. Hall asked a member of the jail staff to check defendant's situation. A nurse cleaned the glass and blood from defendant.

Sgt. Hall agreed he never read Miranda warnings to defendant. Defendant never swore, threatened, or tried to use bodily force.

Ms. Hughes saw her brother the next morning at approximately 8:30 a.m. They returned to the family home in Harrison. Defendant was limping and appeared very much in pain. He said the glass in his shoe cut his foot and caused bleeding during the night. Photographs show defendant's left foot cut, bruised, and swollen. (Def.'s Exs. 1-4.) Ms. Hughes observed the wounds appeared fresh and were still bleeding with no scabs. His foot was cleaned somewhat before the photographs were taken. His entire shoe was discolored with blood. Ms. Hughes saw no blood or bleeding on defendant's wrists and no scabs or signs of recent bleeding. Shortly after they returned to the family home, medical attention for defendant was sought at the Bridgton Hospital.

CONCLUSIONS

### Motion to Suppress

Defendant argues he was in custody when he was removed form the ambulance. The court concludes defendant was subject only to an investigatory detention and was not in custody for Miranda purposes. See State v. Bragg, 2012 ME 102, ¶¶ 3-5, 9, 48 A.3d 769.

### Trial

The State must prove beyond a reasonable doubt that defendant operated a motor vehicle while under the influence of intoxicants. See State v. Atkins, 2015 ME 162, ¶ 21, 129 A.3d 952. Testimony that defendant "exhibited symptoms of intoxication can be sufficient to support a finding that the defendant was under the influence." Id.

Defendant operated a motor vehicle, which left the road, after he consumed two beers or drinks and had a slight odor of intoxicating beverages coming from his area. That evidence is sufficient to establish probable cause. See State v. Bradley, 658 A.2d 236, 237-38 (Me. 1995). The issue is whether defendant's faculties were impaired by alcohol. See Atkins, 2015 ME 162, ¶ 21, 129 A.3d 952. The State asks the court to find beyond a reasonable doubt that the difficulties experienced by defendant during his interaction with Sgt. Hall resulted from the alcohol consumed and that he was under the influence. On this record, the court declines that request.

First, Sgt. Hall did not testify about any opinion he formed that defendant was impaired or exhibited symptoms of intoxication. He testified about what he and defendant did and that Sgt. Hall placed defendant under arrest.

7

Second, the testimony of Ms. Hughes and Attorney McNulty was credible. On July 1, 2016, defendant suffered from significant physical impairments and limitations and pain, including walking and hearing difficulties. He had just been involved in an accident that included travelling 271 feet after leaving the road and colliding with a tree. The accident resulted in severe damage to his vehicle and injury to himself. Sgt. Hall did not inquire about any of these circumstances. Instead, the State appears to shift the burden to defendant, while in apparent shock and while bleeding, to notify law enforcement about his injuries and physical impairments; to understand, with no explanation, the concept of field sobriety tests and how and when they should be performed; and to answer every question and comply with every demand, regardless of whether the questions and demands were heard and understood.

Third, the credible description by Ms. Hughes and Attorney McNulty of the treatment of defendant and of them is unrebutted on this record and affects the court's determination of the credibility of the State's only witness. Fourth, the court does not conclude, on this record, that defendant understood the implied consent information and accords no significance to the refusal to submit to a test.

The State has failed to prove beyond a reasonable doubt defendant was under the influence at the time he operated the vehicle.

The entry is

Defendant's Motion to Suppress is DENIED.

The Court's finding: Defendant is NOT GUILTY of Operating under the Influence.

Date: February 3, 2017

Nancy Mills
Justice, Superior Court

8