STATE OF MAINE
SAGADAHOC, SS.

DISTRICT COURT
West Bath
Docket No. CDCR-16-00932

STATE OF MAINE

v.

**ORDER ON DEFENDANT'S
MOTION TO SUPPRESS**

JAMES R. THIBEAULT,
            Defendant.

The court held a hearing on February 22, 2017 on Defendant's Motion to Suppress. Assistant District Attorney Jonathan Liberman represented the State. Adam Sherman, Esq. represented Defendant. Defendant moves to suppress his statements made prior to being *Mirandized*, and also challenges whether there was probable cause for the arrest.

Findings of Fact

Based on the testimony presented at the hearing and review of the booking room video, the court makes the following findings of fact. On October 29, 2016, Sgt. Ramsay was called to Topsham Fair Mall Road in reference to a hit and run. Witnesses informed Sgt. Ramsay that a vehicle had sideswiped another vehicle. The driver of the vehicle that was hit informed Sgt. Ramsay that he had an interaction with the driver who hit him (hereafter Defendant) and the Defendant told the victim to "calm down" and then drove off. There was a third party eye-witness to the accident who followed the Defendant to a nearby gas station. The eye witness told the Defendant he was in an accident and that he should return to the scene. The eye witness gave Sgt. Ramsay the license plate number of the vehicle that had left. While on scene, Sgt. Ramsay was informed that Defendant had arrived at the police station to report an accident.

Sgt. Ramsay returned to the police station and observed Defendant's vehicle parked in the "cruiser only" section of the parking lot, and observed that the vehicle

1

had front-end damage. Defendant, the registered owner of the vehicle, was in the lobby, and told Sgt. Ramsay that someone had hit him. Sgt. Ramsay testified that Defendant seemed "off," and had red, watery eyes, slow movement, and slurred speech. However, at that time, Sgt. Ramsay did not observe an odor of alcohol. Defendant denied the interaction with the other driver at the gas station and denied drinking.

After going out to Defendant's vehicle so that Defendant could retrieve paperwork, Sgt. Ramsay took Defendant into the booking room. Sgt. Ramsay went over the eye-witness statement with Defendant, which contradicted Defendant's statement denying the interaction at the gas station. Defendant stated that he had stopped at the gas station but didn't see anyone there. Sgt. Ramsay then asked if Defendant would take a portable breath test and Defendant agreed. While taking the test, Sgt. Ramsay observed an odor of alcohol, and the portable breath test indicated the presence of alcohol--but not a level of alcohol. Sgt. Ramsay stated, "so you have been drinking" to which Defendant replied he had that afternoon. When asked if he had had any alcohol between the gas station and the police station, Defendant said no.

Sgt. Ramsay then administered field sobriety tests: Horizontal and Vertical Gaze Nystagmus, "walk and turn," and the one-leg stand, which he is certified to administer. In administration of these tests, Sgt. Ramsay did not strictly comply with all proscribed procedures. For example, video from the booking room shows that during the Nystagmus test, Sgt. Ramsay did not hold Defendant's gaze for the required minimum of four seconds, and did not keep the light at the required 45 degree angle. Sgt. Ramsay also testified that his report was not accurate in some respects, including that Defendant only missed one step during the walk and turn, not multiple. Nevertheless, the court credits Sgt. Ramsay's observations that during the Nystagmus test, Sgt. Ramsay observed four of the six clues, and that Defendant failed both the walk and turn and the one-leg stand.[1]

Immediately following the completion of the field sobriety tests, Sgt. Ramsay asked Defendant whether he was driving at the time of the crash. Defendant responded "yeah." Sgt. Ramsay asked Defendant if he went to the gas station and then the police station, (Defendant responded "yes") and then whether, during the time from the crash

---

[1] During the walk and turn, Defendant started the test twice before he was supposed to, and was jittery; during the one-leg stand, Defendant used his arms for balance, swayed, and put his other foot down.

to the time he came to the police station, he had had anything to drink. Defendant responded "no." Sgt. Ramsay informed Defendant that Defendant was intoxicated, that he was going to place Defendant under arrest, and that Defendant would need to take a breathalyzer test.

Probable Cause to Arrest

The probable cause standard to arrest for OUI is low. *See State v. Webster*, 2000 ME 115, ¶ 7, 754 A.2d 976. "For there to be probable cause to arrest someone for operating under the influence ... an officer must have probable cause to believe that the person's senses are affected to the slightest degree, or to any extent, by the alcohol that person has had to drink. A reasonable suspicion to support probable cause can exist independent of any evidence of actual impaired driving." *Id.* Under a probable cause analysis, the standard is whether an ordinary prudent and cautious officer would have probable cause. *State v. Bolduc*, 1998 ME 255, ¶ 7, 722 A.2d 44.

As a preliminary matter, Defendant argues that the court should not credit the results of the field sobriety tests because Sgt. Ramsay did not strictly comply with the proscribed procedures. However, "subject to the court's gatekeeping role established in Maine Rules of Evidence 401 to 403 and 601(b), any deficiencies in an officer's training or expertise, or failure to strictly comply with prescribed procedures in making observations or conducting tests, go to the weight, but not the admissibility, of the officer's testimony regarding observations of impairment." *State v. Atkins*, 2015 ME 162, ¶ 2, 129 A.3d 952. Accordingly, the court will give the results consideration in totality with Sgt. Ramsay's other observations.

Sgt. Ramsay knew the following: he had been informed that Defendant had side-swiped another vehicle and left the scene. When Sgt. Ramsey returned to the police station, he observed Defendant's vehicle parked in an area where he should not have parked and the vehicle had front-end damage. Upon meeting Defendant in the lobby of the police station, Sgt. Ramsay observed Defendant's eyes were red and watery, he had slow movement, and slurred speech. Upon administration of the portable breath test, Sgt. Ramsay observed the odor of alcohol, and the result of the portable breath test was

3

positive for the presence of alcohol.[2] Finally, during the administration of the field sobriety tests, Sgt. Ramsay noted signs of intoxication that would affect Defendant's senses and his ability to operate a vehicle. Given all of the facts, a prudent and cautious officer would conclude that Defendant had driven under the influence at the time of the crash.

Thus, the court finds that there was sufficient probable cause to arrest Defendant on suspicion of OUI.

Defendant's Statements

By agreement of the State, all of Defendant's statements made after formal arrest and prior to *Miranda* are excluded. However, Defendant also seeks to suppress Defendant's statements made before he was formally placed under arrest.[3]

For defendant's pre-*Miranda* statements to be admissible, the state must prove by a preponderance of the evidence that the defendant was not subject to a custodial interrogation at the time the statements were made. *State v. Hassan*, 2007 ME 77, ¶ 13 925 A.2d 625.

An interrogation is questions, words, or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *State v. Arbour*, 2016 ME 126, ¶ 19, 156 A.3d 1106. The test is an objective one. *Id.* Generally speaking, a question that seeks to elicit information as to an element of the crime that Defendant is suspected of committing constitutes interrogation. *See State v. Rossignol*, 627 A.2d 524, 526 (Me. 1993) (police officer's questions constituted interrogation where "the question was reasonably likely to elicit a response from [Defendant] material to the

---

[2] To the extent Defendant would argue that he was in custody after the result of the portable breath test, the court notes there is a difference between probable cause that defendant had been drinking (not a crime unless contrary to bail conditions) and probable cause that defendant committed OUI --in the video it's not clear at first glance that defendant was intoxicated. The court finds there was not probable cause to arrest after the portable breath test.

[3] During the hearing, Defense also sought to suppress everything after Defendant was moved into the booking room as involuntary statements. Defendant's performance on a field sobriety test does not violate a defendant's privilege against self-incrimination because the evidence is non-testimonial, and it is therefore admissible. *State v. Millay*, 2001 ME 177, ¶ 15, 787 A.2d 129.

proof of her operation of that vehicle, an element of the offense of which [Defendant] was a suspect").

Sgt. Ramsay's questions to Defendant about whether he was driving, had consumed alcohol that day, and about the events of leaving the scene of the accident all go to elements of OUI and leaving the scene of an accident. Sgt. Ramsay asked these questions in two iterations, first when they first entered the booking room and then after the field sobriety tests. Thus, the issue is when Defendant was in custody.

"Whether a person [is] in custody depends on 'whether a reasonable person, standing in the defendant's shoes, would have felt he or she was not at liberty to terminate the interrogation and leave.'" *State v. Bragg*, 2012 ME 102, ¶ 8, 48 A.3d 769 (quoting *State v. Bridges*, 2003 ME 103, ¶ 26, 829 A.2d 247). There are ten factors that the court considers in determining whether an individual is in custody:

(1)     the locale where the defendant made the statements;
(2)     the party who initiated the contact;
(3)     the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);
(4)     the subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
(5)     subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
(6)     the focus of the investigation (as a reasonable person in the defendant's position would perceive it);
(7)     whether the suspect was questioned in familiar surroundings;
(8)     the number of law enforcement officers present;
(9)     the degree of physical restraint placed upon the suspect; and
(10)    the duration and character of the interrogation.

*State v. Hassan*, 2007 ME 77, ¶ 14, 925 A.2d 625.

Defendant argues, pursuant to *State v. Prescott*, 2012 ME 96, 48 A.3d 218, that Defendant was in custody once Sgt. Ramsay escorted Defendant into the booking room. In *Prescott*, the defendant taken involuntarily from her home, transported in a police vehicle to the accident scene, and questioned. *Id.* ¶ 13. Additionally, the defendant's request to go home was ignored. *Id.* ¶ 15. Here, Defendant came to the police station on his own accord. After meeting Sgt. Ramsay in the lobby, Defendant went outside to retrieve paperwork and then went with Sgt. Ramsay to the booking room. Movement from one room of the police station to another does not rise to the level that the court

5

addressed in *Prescott*. In this case, the court finds that it is reasonable that Sgt. Ramsay would move his discussion with Defendant from the lobby (before going outside to retrieve documents) to the booking room (when returning inside) to take his statement and discuss the eyewitness statement with him. This factor, alone, is not dispositive. Rather, the court must look at the totality of factors.

Some of the factors weigh in favor of the State's position and some weigh in favor of Defendant. In the order listed above: (1) Defendant made the statements in the booking room of the police station; (2) Defendant initiated contact with the police; (3) Sgt. Ramsay questioned Defendant's account of what happened and asked Defendant to do the portable breath test and the field sobriety test, at the conclusion of the tests, probable cause was established; (4) Sgt. Ramsay brought Defendant into the booking room; (5) Defendant never indicated to Sgt. Ramsay by word or action that he wanted to leave; (6) Defendant was the focus of the investigation, which a reasonable person would have perceived once asked to take a breath test; (7) Defendant was in unfamiliar surroundings; (8) Sgt. Ramsay was the only law enforcement officer present; (9) Defendant was not physically restrained; and (10) And the interrogation was relatively brief, approximately 20 minutes from the time Defendant entered the booking room until Sgt. Ramsay informed him he was under arrest, and Sgt. Ramsay was professional and non-threatening.

Consideration of these factors leads the court to conclude that Defendant was in custody at the completion of the field sobriety tests. It was at this time that Sgt. Ramsay had sufficient probable cause to initiate the arrest based on the evidence, not only of Defendant's consumption of alcohol, but also to the extent, however slight, that Defendant's senses were affected by the alcohol. Therefore, all of Defendant's statements made in response to Sgt. Ramsay's interrogation after this point, and before *Miranda*, must be suppressed.

Having found that Defendant's responses were the result of custodial interrogation, Defendant's following statements are suppressed:

(1) Defendant's response of "yeah" to the question of whether he was driving during the crash; and

(2) Defendant's response of "yes" to the statement of starting the car, going to the gas station and driving at the police station; and

6

(3) Defendant's response of "no" to whether he had had a drink from the time of the crash to the arrival at the police station.

In summary, insofar as the statements discussed *supra*, Defendant's Motion to Suppress is GRANTED; Defendant's Motion to Suppress is DENIED in all other respects.

The Clerk will incorporate this order by reference on the docket at the direction of the Court pursuant to M.R.Civ. P. 76(a):

Date: _____3/17/17_____

_____
Judge Beth Dobson
Maine District Court