STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss                                     DOCKET NO. CR-18-00006

STATE OF MAINE                        )
                                      )
                                      )
                                      )
vs                                    )           DECISION ON MOTION
                                      )
                                      )
                                      )
RUSSELL J. HAFFORD                    )
                Defendant             )


Pending before the court is the Defendant's Motion to Suppress[1]. For the reasons set forth

herein, the court denies this motion.

## FINDINGS OF FACT

On January 5, 2018 at approximately 10:45 pm, Maine State Police Trooper Nathan

Derosier was on routine patrol and was northbound on Rt. 161 in the vicinity of Cross Lake. The

officer was driving his marked State Police cruiser and he was in full uniform. The weather that

evening was brutally cold with blowing snow.

Trooper Derosier observed a man dressed only in light clothing, meaning unsuitable for

the prevailing weather conditions. The man was walking southbound along the edge of the road.

The man was the Defendant. Out of concern for the Defendant's safety, Trooper Derosier pulled

over and stopped his cruiser. He did not activate his blue lights. He got out of his cruiser and

went to speak with the man. He asked the Defendant why he was out walking in such

conditions. The Defendant advised that he had "rolled" his vehicle and that he was going to get

---

[1] Included within the Defendant's motion is a separate part of the motion that contends that the State had committed a discovery violation by failing to turn over a video recording of the administration of the Defendant's intoxilizer test. As of the date of this hearing, the State had provided that video to the Defendant. For that reason, the court dismisses that part of the motion that seeks suppression of the intoxilizer test result as a sanction for a discovery violation. The dismissal is without prejudice. Once the Defendant has had a chance to view the video, if he perceives a basis for a remedial motion based on the video, he will be granted leave to bring that motion.

help. He said that he was going to his friend's home near St. Peter's store on Rt. 161. Being familiar with the area, the officer recognized that the store and therefore the friend's home were at least several miles away from their present location. The officer asked the Defendant if he was injured and the Defendant indicated that he was not.

Trooper Derosier asked the Defendant if he needed help and could the officer call a wrecker for him? The Defendant accepted the officer's offer of assistance. He agreed to accompany the officer back to the accident scene to wait for the wrecker. There being no other options to provide for the Defendant's safety, the officer invited the Defendant to step into his vehicle out of the cold and windy weather conditions. The Defendant accepted the offer and got in. As the Defendant moved towards the trooper's vehicle, Trooper Derosier observed the Defendant stumble slightly; the officer did not immediately find this to be significant because of the strong winds and blowing snow.

As the Defendant prepared to get into the cruiser, the officer asked if had any weapons on his person. The Defendant simply opened his jacket to show that he did not. The officer did not otherwise seek to "pat down" the Defendant or do any other kind of protective search. He did not place the Defendant in handcuffs. He simply cleared away some items from the passenger seat of his vehicle and the Defendant got in. Soon after the Defendant entered the vehicle, Trooper Derosier could smell the odor of intoxicating liquor.

The two men proceeded back to the location of the Defendant's vehicle. It took only a minute to get there and the two men engaged in only limited "small talk". The Defendant's vehicle was on its side approximately ½ mile from where the officer had first encountered the Defendant. The vehicle's location was close to the intersection of the Ouellette Road and Rt. 161 near a sharp corner in the road. This is a very rural area and there are very few homes and no

public areas, stores or similar opportunities for shelter from the adverse weather conditions. The area was one of open fields without any adjacent protective forest to provide a wind break.

Shortly after the Defendant got into the vehicle, the officer recognized him from two previous non-professional encounters. On one occasion, the officer had encountered the Defendant at a deer tagging station in Allagash; on another occasion, the officer had offered assistance to the Defendant and his mother in dragging out of the woods a moose they had shot.

Shawn Merrill, a volunteer fire fighter with the North Lakes Fire Department was at the scene when they arrived. Mr. Merrill had activated the emergency lights on his vehicle. The trooper also activated his emergency vehicle lights.

In anticipation of preparing a routine accident report, Trooper Derosier asked the Defendant for his driver's license, motor vehicle registration and his proof of insurance. The Defendant got out of the trooper's vehicle and went to get these documents. The officer also got out of the vehicle and went to take some pictures of the Defendant's vehicle on its side.

At no time did the Defendant ask to get out of the vehicle. At no time did the officer tell the Defendant that he could not get out of the vehicle.

The weather continued to be very cold and the officer asked the Defendant to get back into the cruiser. Once inside the cruiser again, the officer asked the Defendant how much he had to drink. The Defendant responded that he had consumed only one Budweiser beer. The officer asked if he had consumed the beer before or after the accident. The trooper testified that at this point, his accident investigation had evolved into an "OUI investigation."

The Trooper asked the Defendant if they could move to a safer location and away from the sharp corner where the accident had taken place for the purpose of conducting some field sobriety tests. The Defendant agreed. The Trooper told the Defendant that he was not under

3

arrest. The Defendant acknowledged that he understood this. The Trooper asked the Defendant which wrecker service he would like the officer to call. The Defendant responded that the officer should call "Twins" and the officer did so.

Throughout the entire encounter, both men were cordial to each other. There were no loud voices or confrontational exchanges.

## DISCUSSION

The Defendant contends that the officer's questions of the Defendant constituted a custodial interrogation without the benefit of Miranda warnings. The Law Court has indicated that:

> In order for statements made prior to a Miranda warning to be admissible, the State must prove, by a preponderance of the evidence, that the statements were made while the person was not in custody, or was not subject to interrogation. Whether a person was in custody depends on "whether a reasonable person, standing in the defendant's shoes, would have felt he or she was not at liberty to terminate the interrogation and leave. (State v. Bragg, 2102 ME 102, ¶8, 48 A.3d 769,771; internal citations omitted)

The Defendant contends that, when he made the statements to Trooper Derosier in his cruiser regarding how much he had to drink and when he had consumed that alcohol and when he went with the trooper to perform field sobriety tests he was in custody and entitled to Miranda warnings.

The State responds that the Defendant was subject only to an investigatory detention, more commonly known as a Terry stop. See State v. Donatelli, 2010 ME 43, ¶¶ 11-12, 995 A.2d 238. This distinction is key because, as a general rule, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)

To qualify as a mere Terry stop, a detention must be limited in scope and executed through the least restrictive means (quotation marks omitted). Brief investigatory detentions are

4

justified when they are based on "specific and articulable facts," and can be solely for safety concerns as part of the "community caretaking function[]" of police officers, which includes "investigat[ing] vehicle accidents in which there is no claim of criminal liability." State v. Pinkham, 565 A.2d 318, 319-20 (Me. 1989) (quotation marks omitted). As we said in State v. Gulick, 2000 ME 170, P 10 n.4, 759 A.2d 1085, "[a] brief restriction on a citizen's right to walk (or drive) away is usually referred to as a detention or a stop in order to distinguish the more limited restriction from a restriction commensurate with arrest."

The court concludes that the Defendant was never in custody for purposes of the Miranda analysis. Upon observing the lightly dressed Defendant walking along a remote stretch of Maine road at night and under brutally cold winter weather conditions, Trooper Derosier would have been derelict in his duty if had not stopped to check on the Defendant's well-being. Upon learning of the Defendant's "roll over" accident, the officer simply began a routine accident investigation so that he could prepare a report as he is required to do upon learning of a motor vehicle accident. The Defendant did not acquire an "in custody" status by accepting Trooper Derosier's offer of assistance in returning to the scene and calling for a wrecker. The Defendant voluntarily returned to the scene with the officer so that he could collect his license, vehicle registration and insurance information for the officer's report. That the Defendant was not in custody is demonstrated by his getting out of the cruiser at the scene and going to collect his documentation without asking for permission to do so. He knew that he was not subject to any kind of restraint.

Nor did the Defendant enter into "custody" when he got back into the police cruiser. In deed, in order to protect himself from the adverse winter weather conditions and having no other viable options, the Defendant really had no choice but to accept Trooper Derosier's offer of

"shelter". He was in the police vehicle because it was the only place that anyone in their right mind would want to be in such weather conditions. Essentially, he was there by virtue of his "de facto consent". He willingly, and quite sensibly, accepted an invitation of shelter from the elements. This is not a custodial detention tantamount to "de facto" arrest.

It is true that once in the cruiser, a routine "motor vehicle accident investigation" evolved into an "OUI investigation." The motor vehicle accident, the brief "stumble" that the officer had initially observed and the odor of intoxicating liquor were competent to create an objectively reasonable articulable suspicion that perhaps the Defendant had committed the crime of operating under the influence. This court would find that Trooper Derosier's limited detention of the Defendant and his preliminary limited questioning of the Defendant did not exceed constitutional bounds. As indicated herein, the officer was within constitutional bounds to detain the Defendant briefly and to make some limited inquiries as part of his initial "OUI investigation". In making this brief detention, in asking some preliminary limited questions and in asking the Defendant to perform several field sobriety tests in a safer location, Trooper Derosier did not take the Defendant into custody and thereby trigger any obligation to provide Miranda warnings. The court concludes that the State has met its burden of proving by a preponderance of the evidence that the Defendant was not in custody at the relevant time and was therefore not entitled to Miranda warnings.

The entry shall be: The Defendant's Motion to Suppress is denied.

Date: September 11, 2018

E. Allen Hunter
Justice, Superior Court (Active Retired)

6