STATE OF MAINE                        CRIMINAL COURT 19-2841
CUMBERLAND, ss                 DOCKET NO CR-~~18-20190~~

| | |
|---|---|
| STATE OF MAINE     ) | |
|                    ) | ORDER ON DEFENDANT'S |
| v.                ) | MOTION TO SUPRESS |
|                    ) | |
| DANA ALLEN        ) | |

REC'D CUMB CLERKS OF
DEC 9 '19 PM 4:12

This matter came before the court on November 7, 2019 for hearing on Defendant's motion to suppress. Defendant was present and represented by Attorney Deborah Munson Feagans, Esquire. The State was represented by student attorney Rose Guimaraes and Assistant District Attorney William Barry, Esquire.

At the onset of the hearing, Defendant clarified the issues raised by his motion to suppress. Specifically, Defendant challenges whether the officer has sufficient probable cause to arrest Defendant[1], and whether the State violated Defendant's federal and state rights under *Miranda v. Arizona*, 348 U.S. 436 (1966) and its progeny. The court heard the testimony of Patrol Sergeant Angela Porter of the Maine State Police. After hearing, and having considered all of the evidence and arguments presented, the court makes the following Findings of Fact and Conclusions of Law upon which the Order set forth below is based:

Angela Porter is a patrol sergeant with the Maine State Police a position that she has held for three years. Prior to that she worked as a Trooper with the Maine State Police as well as being employed as an officer with the South Portland Police Department from 2000 to 2003. Sgt. Porter was trained at the Maine Criminal Justice Academy and holds certification for standardized field sobriety testing. In addition to the

---

[1] Defendant did not challenge whether there was sufficient reasonable, articulable suspicion to stop or detain Defendant's vehicle or to request that he perform field sobriety tests.

Entered on the Docket: 12·9·19        1

basic training course, Sgt. Porter has received specialized training in Advanced Roadside Impaired Driving Enforcement (ARIDE). The ARIDE training focuses on advanced training regarding impairment by drugs.

On February 15, 2019 Sgt. Porter was working, she was in an unmarked cruiser equipped with low lights, and in full uniform. At approximately 11:02 pm, Sgt. Porter, who was at Saco Police Department on another matter, learned from dispatch of an accident on the Maine Turnpike at mile 42 in Scarborough. The accident occurred in the south bound direction of travel and involved a Maine Turnpike plow truck and an SUV which had reportedly left the area. Officers were dispatched to be on the lookout for the suspected SUV.

Approximately 20 minutes after the initial report was received, Sgt. Porter learned that Saco officers had located the SUV at the Saco "park and ride," and were requesting a trooper.[2] Sgt. Porter responded to the location of the SUV arriving "a couple" minutes after receiving the request. Upon her arrival, Sgt. Porter was informed by the Saco officers that when they first arrived, they observed a male outside of the vehicle speaking on his cell phone. The male was seen by the medics with the rescue at the park and ride. When Sgt. Porter first arrived the male was inside the rescue unit. The Saco officers informed Sgt. Porter that they had not spoken with the operator prior to his involvement with rescue. Sgt. Porter also learned from other troopers who spoke with the plow operator, that the accident occurred when the SUV approached the back of the plow truck which was treating the road in the inside travel lane of the turnpike. The SUV struck the rear right (passenger) side area of the plow truck then pulled into the middle lane, and continued on passed the truck, driving off.

_____

[2] Since the accident occurred on the Maine State Turnpike, the Maine State Police had initiated the call, and were handling the accident.

Sgt. Porter observed that the SUV had substantial damage to the driver's side front of the vehicle, in particular where the windshield and driver's side window connected to the vehicle. She also observed broken glass and crush damage consistent with the vehicle having been involved in an accident. Sgt. Porter noted that the SUV matched the description she had received from dispatch of a silver or tan SUV as reported from the accident.

Sgt. Porter then made contact with the male who she identified as Defendant in the rescue unit. Defendant did not have his license on his person, but informed her it was inside the vehicle above the driver's side visor. Sgt. Porter was not able to open the driver's side door to retrieve the license due to the damage to the vehicle. Defendant told Sgt. Porter his name and date of birth, and acknowledged that the vehicle belonged to him and he was the registered owner. Sgt. Porter began speaking with Defendant concerning the accident report.

Defendant was wearing shorts and a hooded sweatshirt. While speaking to Defendant, Sgt. Porter noted that Defendant had slurred speech, red eyes, and some abrasions on his knees. She noted that his left knee had more visible injury than the right. When Sgt. Porter asked Defendant if she could look to see if he had any visible seat belt abrasions, he said that he was not wearing his seat belt but that she could look. In lifting Defendant's sweatshirt, Sgt. Porter observed paint chips on Defendant's neck which were a similar color to the vehicle. Sgt. Porter also observed loose pieces of glass on, and in the front pocket of, his sweatshirt.

Defendant said that he was the passenger in the vehicle, and not the driver at the time of the accident and that he exited the vehicle on the passenger side door. Sgt. Porter did not observe any glass or paint chips on the passenger side of the vehicle, only in the driver's side, mostly near the driver's side door. Sgt. Porter did observe a bag of food on the passenger seat in the SUV. Defendant also said that he did not

3

know the name of the person who was driving or how to get in touch with the driver as he had just met the person that evening.

When asked if he had had anything to drink, Defendant said that he had consumed 4 Busch beers, and stopped drinking around 10:00 pm. When asked, Defendant informed the officer that he took medication for high blood pressure and diabetes. Sgt. Porter asked rescue to check Defendant's blood sugar to rule out any diabetes related issue at the time. At this point Sgt. Porter requested Defendant to perform field sobriety test.

Defendant, who was still in the rescue, was seated in a captain's style chair at the time of the test and was wearing glasses. Prior to starting the test, Sgt. Porter observed Defendant's eyes noting equal pupil size and that Defendant's eyes tracked. The test was then explained to Defendant. Defendant performed the test, and Sgt. Porter noted 6 of 6 possible clues (3 in each eye). After completing the HGN test, Sgt. Porter performed a second eye test, lack of convergence. Although she noted some bouncing of Defendant's eyes, she did not determine the clues sufficient for a determination on this test, which is generally used for drug related impairment determinations.

Sgt. Porter did not have Defendant perform any other field sobriety tests due to the accident and his physical condition. Sgt. Porter again asked for any information about the driver but he was unable to provide any information, including a first or last name. Sgt. Porter asked if Defendant wanted to go to the hospital to be fully evaluated, and he said that he did. Sgt. Porter followed rescue to the hospital. Once in Defendant's room at the hospital, Sgt. Porter noted the odor of alcohol coming from Defendant and she noted abrasions on his left arm. Sgt. Porter requested that Defendant submit to a blood draw, which he consented to.

In order to justify an arrest, an officer must have probable cause to believe the Defendant's senses were "affected to the slightest degree, or to

4

any extent," by the alcohol consumed. *State v. Webster*, 2000 ME 115, ¶7, 754 A.2d 976, 978. See also *State v. Morrison*, 2015 ME 153. "Probable cause to arrest exists whenever facts and circumstances within the knowledge of the police and of which there was reasonably trustworthy information would warrant a prudent and cautious person to believe that the arrestee had committed the crime." *Morrison*, 2015 ME 153, at ¶8. In this case, Sgt. Porter had information of the accident on the turnpike and that the vehicle did not stop after striking the moving plow truck. The SUV was located in an area park and ride lot, showing signs of a new or fresh accident, including having broken glass and paint chips in the vehicle. Glass and paint chips were also found on Defendant who admitted to being in the vehicle which struck the plow truck. Defendant, who was the registered owner of the vehicle, and who told Sgt. Porter that the vehicle belonged to him, did not admit, however, that he was the driver. Defendant was not able to provide any information regarding who the driver was, including not being able to give a first name or any identifying information. Sgt. Porter noted that Defendant's eyes were red and he had slurred speech. She also noted that Defendant had abrasions on his knees, more on his left leg than his right, which was consistent with a strike to the driver's side of the vehicle, and consistent with the damage noted to the vehicle itself. Defendant acknowledged that he had consumed four beers, stopping an hour earlier than the accident. Sgt. Porter noted 6 of 6 clues on the HGN test. She also noted the odor of alcohol once she was with Defendant at the hospital. This evidence is sufficient to establish probable cause.

Next Defendant argues that his statements should be suppressed as they were made without the benefit of *Miranda*. "In order for statements made prior to a *Miranda* warning to be admissible, the State must prove, by a preponderance of the evidence, that the statements were made while the person was not in custody, or was not subject to interrogation." *State v. Bragg*, 2012 ME 102, ¶8, 48 A.3d 769, 773,

quoting *State v. Bridges*, 2003 ME 103¶23, 829 A.2d 247. Whether a person is in custody depends on "whether a reasonable person standing in the defendant's shoes, would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.*. When Defendant was speaking to Sgt. Porter, he was not under arrest. He was the subject of a roadside detention, which was a brief and temporary investigatory stop. See *Bragg*, at ¶9. This brief detention to investigate is consistent with the characteristics of a *Terry*-type stop that does not rise to the level of custody for Fifth Amendment purposes. *See Bragg*. Defendant was not in custody during his statements to Sgt. Porter. Sgt. Porter went the hospital to continue her investigation but her conduct did not create a *de facto* arrest. Further, although charged, Defendant was not arrested.

Based on the foregoing, Defendant's Motion to Suppress is DENIED.

Dated: December 9, 2019

_____
Deborah P. Cashman
Judge, Maine District Court

6

STATE OF MAINE
  vs
DANA J ALLEN
39 SANFORD ROAD
WATERBORO ME 04087

MLR/SC # 129-20



CRIMINAL DOCKET    12/9/19
CUMBERLAND, ss.
Docket No    CUMCD-CR-2019-02841

**DOCKET RECORD**

DOB: 05/13/1965
Attorney:    DEBORAH FEAGANS                    State's Attorney:    JONATHAN SAHRBECK
             LAW OFFICE OF DEBORAH MUNSON
             FEAGANS ESQ
             31 MAIN STREET SUITE 4
             GORHAM ME 04038
             APPOINTED 06/05/2019

Filing Document:    CRIMINAL COMPLAINT          Major Case Type:  MISDEMEANOR (CLASS D,E)
Filing Date:        06/03/2019

**Charge(s)**

1   OUI (ALCOHOL), 1 PRIOR                      02/15/2019    SCARBOROUGH
Seq 12944      29-A  2411(1-A)(B)(1)    Class D

2   FAIL TO STOP, REMAIN, PROVIDE INFORMATION   02/15/2019    SCARBOROUGH
Seq 10958      29-A  2253(3)            Class E

**Docket Events:**

06/04/2019 FILING DOCUMENT - CRIMINAL COMPLAINT FILED ON 06/03/2019

06/04/2019 Charge(s):  1,2
           HEARING - ARRAIGNMENT SCHEDULE OTHER COURT ON 06/05/2019 at 08:30 a.m. in Room No. 1

           PORSC
06/05/2019 Charge(s):  1,2
           HEARING - ARRAIGNMENT HELD ON 06/05/2019
           JED  FRENCH , JUDGE
           DA:  CARLOS DIAZ
           Defendant Present in Court
           DEFENDANT INFORMED OF CHARGES.                    FTR1
06/05/2019 Charge(s):  1,2
           PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 06/05/2019

06/05/2019 MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 06/05/2019

06/05/2019 MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 06/05/2019
           JED  FRENCH , JUDGE
           COPY TO PARTIES/COUNSEL
06/05/2019 Party(s):    DANA J ALLEN
           ATTORNEY - APPOINTED ORDERED ON 06/05/2019

           Attorney: DEBORAH FEAGANS
06/05/2019 HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 09/10/2019 at 08:30 a.m. in Room No. 7

06/05/2019 Charge(s):  1,2
           TRIAL - JURY TRIAL SCHEDULED FOR 11/12/2019 at 08:30 a.m. in Room No. 11

           NOTICE TO PARTIES/COUNSEL
09/10/2019 HEARING - DISPOSITIONAL CONFERENCE HELD ON 09/10/2019
           DEBORAH  CASHMAN , JUDGE
           Attorney: DEBORAH FEAGANS