STATE OF MAINE

AROOSTOOK, ss

UNIFIED CRIMINAL COURT
LOCATION: CARIBOU
DOCKET NO. CR-20-002

STATE OF MAINE      )
      )
      )
      )
vs.      )      ORDER ON MOTION
      )      TO SUPPRESS
      )
      )
SCOTT W. BROWNING      )
      Defendant      )

By a Complaint dated January 3, 2020, Defendant Scott Browning (hereafter "Browning") is charged with Domestic Violence Stalking, Class D (17-A M.R.S.A. §210-C(1)(A)), Criminal Trespass, Class E, (17-A M.R.S.A.§ 402(1)(E)), and Harassment, Class E (17-A M.R.S.A. § 506-A(1)(A)). Pending before the court is Browning's Motion to Suppress Statements, filed October 28, 2020. Browning contends that he was subjected to a custodial interrogation by a law enforcement officer without the benefit of *Miranda* warnings, and that any statements made were not made voluntarily. Hearing on the motion was held April 20, 2021. At hearing testimony was received from Sergeant Erica Pelletier of the Aroostook County Sheriffs Office. Also admitted into evidence was Exhibit 1, which is a recording of the body camera Sergeant Pelletier was wearing which contains audio and video of the arrest, transport to the police staion via cruiser, and also while in booking at the Presque Isle Police Station.

1

<u>Findings of Fact</u>

On December 15, 2019 Sergeant Pelletier received a radio call from dispatch that Miranda Levesque had called making a complaint that Browning, who was her ex and father of her children, was stalking and harassing her. Sergeant Pelletier, who was in Caribou at the time, responded by telephoning Ms. Levesque. In this phone call, Ms. Levesque gave a statement that Browning had been stalking and harassing her that evening and had also entered her garage. Based upon the information Ms. Levesque provided, Sergeant Pelletier decided to arrest Browning and began driving to Presque Isle where Browning resided. While in route, Sergeant Pelletier contacted Presque Isle Police requesting assistance with the arrest, and also telephoned Browning to tell him she needed to meet with him.

Upon arriving at Browning's residence and his coming to the door, Sergeant Pelletier immediately advised Browning he was under arrest for DV stalking, harassment, and criminal trespass. Per the video, it appears Browning was restrained with handcuffs. Sergeant Pelletier asked Browning whether he had any weapons in his possession, how much he had to drink, and if he had $60 to make bail. In the recording, Browning can be heard talking continuously. Officer Pelletier testified Browning told her he had not left his partment that evening, to which she responded by telling Browning she knew he had not been at his apartment all evening. Otherwise, most of what Browning stated when he was arrested was not discernible, other than his asking again why he was being arrested.

Sergeant Pelletier then placed Browning in the front seat of her cruiser to transport him to the Presque Isle Police Station, a 5" to 8" drive from Browning's residence. In the cruiser and while in route to the police station, Sergeant Pelletier again told Browning he was being arrested for DV stalking and harassment and for going into Ms. Levesque's garage and continuously

calling her. During the drive, Browning continued to talk, but again most of what he said was indiscernible. It is inferred he was talking about the status of his relationship and contact with Ms. Levesque. Through this discussion, Sergeant Pelletier said to Browning that he had hurt feelings because Ms. Levesque had a new boyfriend and was moving on. Browning continued to talk, again mostly indicernible, and Sergeant Pelletier then told Browning he had made some poor choices that evening. Browning then made statements relative to his contact with Ms. Levesque which could be interpreted as admissions.

Once at the station, Browning was booked and the bail commissioner was called. The court is left with impression that at the station the discussions centered around booking and bail, and no incriminating statements were made until after the bail commissioner arrived. In the process of setting bail, the bail commissoner explained to Browning the conditions of his bail. Upon advising Browning of the no contact provisons, Browning broke down, began to cry, and made some statements relative to his contact with Ms. Levesque.

Standard of Review

Only a voluntary confession is admissible into evidence, and the State must prove voluntariness beyond a reasonable doubt. *State v. Kittredge,* 2014 ME 90 ¶24; *State v. McCarthy,* 2003 ME 40, ¶12, 819 A.2d 335, 340. The voluntariness requirement gives effect to three overlapping but conceptually distinct values:

(1) it discourages objectionable police practices;

(2) it protects the mental freedom of the individual; and

(3) it preserves a quality of fundamental fairness in the criminal justice system.

3

*State v. Hunt,* 2016 ME 172, ¶ 20, citing *State v. Mikulewicz,* 462 A.2d 497, 500 (Me. 1983).

To determine whether a confession is voluntary, the court must consider the totality of the circumstances. *State v. Lockhart,* 2003 ME 108, ¶ 30, 830 A.2d 433, 444. A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all the circumstances its admission would be fundamentally fair. *State v. Coombs,* 1998 ME 1, ¶ 10. See also *State v. Mikulewicz,* 462 A.2d 497, 501(Me. 1983). In making its decision of voluntariness, the court may consider the following factors: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of Miranda warnings; the number of officers involved; the persistence of the officers; police trickery, threats, promises or inducements made to the defendant; the defendant's age, physical, mental health, emotional stability, and conduct. Id citing *State v. Sawyer,* 2001 ME 88 ¶ 9, 772 A.2d at 1176. *State v. Hunt,* 2016 ME 172, ¶ 22.

In this case, there is no dispute the Defendant was in custody and under arrest when his statements were made. The more narrow question is whether Browning was interrogated and Miranda warnings were required. Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *State v. Dominique,* 2008 ME 180, ¶ 12; citing *Rhode Island v. Innis,* 446 U.S. 291(1980). For Miranda purposes, an interrogation encompasses not only direct questions but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* See

4

also *State v. Bragg*, 2012 ME 102, ¶ 15. The State bears the burden of establising by a preponderance of the evidence that a Miranda warning was not required. *Bragg*,¶ 15. Courts have recognized that simply presenting a defendant with evidence against him does not necessarily constitute an interrogation for Miranda purposes. *Bragg*, ¶ 16. Not all declaratory statememts by police regarding the evidence and charges qualifies as an interrogation. *Id*. citing *Caputo v. Nelson*, 455 F.3d 45 (1ᵃ Cir. 2006). Similarly, threshold or clarifying questions posed by police in response to an ambiguous statement by a suspect do not constitute an interrogation. *State v. Dominique*, 2008 ME 180, ¶14.

Discussion

Upon reviewing the recording of Sergeant Pelletier's interaction with Browning, the court is of the view that upon his being arrested Browning wanted to tell the officer his side of the story. Based upon his actions and speech, consistent with Sergeant Pelletier's testimony of he observations, the court is also of the view that Browning was under the influence. This condition likely influenced his desire to speak. Although much of what Browning said was not discenible, Sergeant Pelletier understood enough of his statements that she knew he was talking about his relationship and contact with Ms. Levesque. The court finds that Sergeant Pelletier engaged in the conversation with Browning, unintentionally inducing him to continue to respond. In particular, Sergeant Pelletier telling Browning his feelings were hurt because Ms. Levesque had moved on, and her telling him he made some poor choices that evening, are both the types of statements that the officer should have recognized that in these circumstances would reasonably likely lead to elicit an incriminating response. In addition, when Sergeant Pelletier asked Browning how much he had to drink that evening, and when he said he had been home all night,

the officer challenged him that she knew he hadn't been home, those similarly are statements made by the officer that would likely elicit an incriminating response.

In summary, almost immediately upon initiating Browning's arrest and through transport to the Presque Isle police station, Sergeant Pelletier made statements and responses to Browning that influenced him to continue speaking. As previously indicated, the court finds that those statements are the type that an officer should have recognized would likely elicit an incriminating response. Accordingly, as Browning had not been provided *Miranda* rights, the court orders that all statements made by Browning to Sergeant Pelletier are suppressed and are excluded from evidence during the State's case in chief. Should Browning testify at trial and such statements are shown to be relevant for impeachment during cross-examination, the court will address admissibility. This order does not exclude any relevant and admissible observations Sergeant Pelletier made of Browning. Finally, as to statements Browning made in response to questions or comments by the bail commissioner, the court reserves ruling until trial to assess relevance, admissibility, and any other evidentiary issues.

The entry is:

Defendant Browning's Motion to Suppress is granted as to all statements made to Sergeant Pelletier.

Dated: April 22, 2021

_____
Justice, Superior Court

6